THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HARRISON CHANCY, Defendant-Appellant.

First District (3rd Division)    No. 79-1414

Opinion filed December 10, 1980.

Alfred L. Levinson and Barry S. Frazin, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Christine A. Campbell, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Harrison Chancy, was charged with the murder of Emmanuel Slivinski. He was also charged with armed robbery, armed violence and burglary. A jury found defendant guilty of all charges and the court sentenced him to concurrent terms of 100 to 300 years for murder, 25 to 50 years for armed robbery, and 5 to 15 years for burglary. On appeal defendant contends that the use of perjured testimony by the State mandates a new trial; that the trial court erroneously denied his motion to suppress the identification; that he was denied a fair trial through the use of prejudicial and hearsay testimony and by improper prosecutorial comment; and that he was denied the effective assistance of counsel.

On May 28, 1977, at about 6 a.m., three persons invaded a Lemont, Illinois, home occupied by Lillian and Emmanuel Slivinski. While the others ransacked the home, the third robber, identified by Mrs. Slivinski as defendant, held a gun on the couple. After about five minutes, the couple were ordered to cover their heads with pillowcases. While Mr. Slivinski prayed, the robbers kicked and struck him to learn the location of valuables in the home. Approximately $1,200 was taken. Before departing, the robbers bound and gagged the couple. Mrs. Slivinski then heard popping noises and felt her husband's blood run down her legs. When the robbers left, she freed herself and summoned help.

Emmanuel died on August 2, 1977, from a bullet wound in the head. From the time of the shooting to his death, he was blind and paralyzed.

Jeffrey LeBowe testified for the State that he was confined with defendant in the Will County jail. After defendant's lawyer noticed a resemblance between defendant and the witness, defendant asked LeBowe to change identification and go to court in defendant's place to

upset the identification procedure. Although LeBowe declined the request, defendant confessed the crime to LeBowe.

We find no merit in defendant's initial contention that his conviction is based on the false testimony of LeBowe. Defendant argues that LeBowe perjured himself when he testified that his previous criminal record consisted of only two burglary convictions whereas in fact he had other convictions. Defendant also complains that LeBowe falsely testified that he received no consideration from the State in exchange for his testimony.

On February 5, 1979, LeBowe testified as a State witness in the present trial. In 1978 he had entered a plea of guilty to two burglaries. At the present trial, the following colloquy occurred during direct examination of LeBowe by the prosecutor:

"Q. Mr. LeBowe, how many crimes were you convicted of to this day?

A. Two.

Q. And what crimes were you so convicted?

A. Felonies, I mean felony burglaries.

Q. Two burglaries?

A. Yes sir.

Q. Now, in return for your testimony today were you given any consideration as to the sentence you will receive for those two burglaries?

A. Yes sir, I was.

Q. Will you tell the ladies and gentlemen of the jury what sentence you received for those two burglaries?

A. Hundred days in jail, three years probation and restitution on the burglaries.

Q. How much money in restitution was the condition of your probation?

A. Close to five hundred dollars."

During cross-examination, LeBowe testified that he was never told his probation was dependent upon his trial testimony. He stated that neither Sheriff Hernandez nor Sheriff Hendrick offered him any deal after he reported his conversation with defendant to them. Hendrick corroborated LeBowe's testimony.

After trial, defendant presented an oral motion for a new trial in which defendant charged that LeBowe testified falsely when he stated he had been convicted of only two burglaries. (Defendant later filed a supplemental record containing a probation report which showed that LeBowe previously had been fined for driving while intoxicated, and had been placed on one year conditional discharge for aggravated battery and trespass.) The prosecutor replied to the motion for a new trial by

pointing out to the court that defense counsel had been furnished LeBowe's complete criminal record and that LeBowe had been subject to cross-examination.

■■ An examination of the foregoing colloquy between LeBowe and the prosecutor clearly demonstrates that LeBowe was not perjuring himself, but was giving answers in the context of the questions asked. He qualified his answer about his previous record to show that he was referring to felonies. It is also evident that LeBowe believed the prosecutor's inquiry referred to the two charges which were pertinent to the plea bargain for his present testimony. Before establishing perjury, questions and answers must be interpreted in the context of what immediately preceded and succeeded them. (*People v. Wills* (1978), 71 Ill. 2d 138, 374 N.E.2d 188.) Perjury cannot be established by an isolated answer or by lifting a statement out of context. *People v. Wills.*

Under the same heading, defendant maintains that false testimony was used to convict him when LeBowe testified that no deal was made in exchange for his testimony. The fact is that under examination by the prosecutor LeBowe specifically stated that he had received consideration in return for his testimony. He testified that he had received probation with time in jail considered served. Defendant failed to demonstrate use of perjured testimony.

Defendant next contends that the trial court erroneously denied his motion to suppress the identification. He maintains that the photographic identification by Mrs. Slivinski was impermissibly suggestive.

Prior to trial, the court conducted a hearing on defendant's motion to suppress. At that hearing, Mrs. Slivinski testified that in the months following her husband's murder she viewed approximately 50 photographs attempting to identify the offenders. On November 30, 1977, she viewed five more photographs for a police officer and recognized defendant as one of the offenders. On the following day, a police officer returned with the same photograph. He asked her to view the photograph again and obtained her initials on it. On April 4, 1978, Mrs. Slivinski viewed a lineup at the police station and identified defendant.

■■ Displaying photographs of suspects to witnesses is proper as long as the procedure is not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. (*Simmons v. United States* (1968), 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967.) Mrs. Slivinski's photographic identification of defendant was not impermissibly suggestive. Some six months after the occurrence, she selected defendant's photograph from a group of five photographs. She made this positive identification after having viewed approximately 50 other photographs submitted to her by the police. It is clear that she acted carefully and responsibly in making the identification. Defendant argues, however,

that the photographic procedure was improper because the police returned with a single photograph of defendant. (See *People v. McKinley* (1977), 69 Ill. 2d 145, 370 N.E.2d 1040.) Mrs. Slivinski was not shown a single photograph of defendant until after she had positively identified him from a group of photographs on the previous day. The photographic identification procedure employed by the police was not impermissibly suggestive, and the trial court correctly denied defendant's motion to suppress the identification.

Defendant next contends that he was denied a fair trial through the use of prejudicial and hearsay testimony and by improper prosecutorial comment in closing argument.

■■ As to the introduction of prejudicial evidence, defendant complains that testimony was adduced regarding the Slivinski family history and circumstances and regarding Mr. Slivinski's physical condition and health from the time of the shooting to his death. We hold, however, that defendant has waived this issue on appeal since he failed to make a timely objection when the testimony was presented at trial. See *People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817.

■■ We find no merit in defendant's argument that impermissible hearsay testimony was introduced into evidence. Chief Patrick Seery of the Lemont Police Department testified that on April 4, 1978, after giving defendant the *Miranda* warnings, he had a conversation with defendant about the crime. Defendant stated that mention of the 1977 Memorial Day weekend jogged his memory. Defendant then stated to the chief that "he gets high every weekend on drugs and that it's entirely possible he could have committed this murder and not remembered that he did it when he was high, he remembers that he was high this weekend." The chief's testimony was not hearsay but was properly admitted as an admission by defendant. (*People v. Fulton* (1979), 68 Ill. App. 3d 915, 386 N.E.2d 605.) Additionally, Mrs. Slivinski's daughter testified that when she arrived at the Slivinski home after the occurrence, the words, "Fantastic, Super Dopee and Me" were written on the kitchen blackboard. Mrs. Slivinski testified that the phrase was not on the blackboard prior to the home invasion. Testimony regarding this wording on the blackboard was not hearsay, but was clearly admissible.

■■ Defendant next urges that certain comments by the prosecutor during closing argument were so improper as to have denied him a fair trial. We note initially that the trial court sustained defense counsel's objections to the majority of the remarks complained of. We believe that the court's prompt action cured any possible error which may have arisen from the comments. (*People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.) Defendant first complains that the prosecutor improperly referred to the trial court's ruling on the motion to suppress when he stated that if the

photograph and lineup were suggestive, the judge would have thrown them out. The court sustained defense counsel's objection to the statement. While the remark was improper, it was not repeated by the prosecutor and the court's action cured the error. Similarly, when the prosecutor started to accuse defense counsel of misleading the jury and to accuse defendant of changing his physical appearance, the trial court promptly sustained defendant's objections and instructed the jury to disregard the remarks.

■■ Defendant also complains of the prosecutor's references to the words written on the Slivinski blackboard and to defendant's conversation with Chief Seery. We already have commented that this evidence was properly introduced into evidence. Consequently, it was proper subject matter for prosecutor's comments. Defendant points out, however, that the prosecutor misstated defendant's words to Chief Seery. The prosecutor, after telling the jury that defendant said he could have done it, inaccurately quoted defendant as saying, "I don't care." The prosecutor's comment does not appear to have been deliberate, and a minor misstatement by a prosecutor does not deprive defendant of a fair trial, especially when the comment is not a factor in defendant's guilt. (*People v. Calahan* (1976), 42 Ill. App. 3d 994, 356 N.E.2d 942.) In the present case, the proof of defendant's guilt was overwhelming. Mrs. Slivinski, who had an excellent opportunity to observe the assailant was positive in her identification of defendant. Her testimony received strong corroboration from LeBowe.

Defendant's final contention is that he was denied the effective assistance of counsel. Defendant was represented at trial by two assistant public defenders. In a case involving the competency of appointed counsel, it has been held that the applicable standard is the actual incompetency of counsel as reflected by the manner of carrying out the duties as a trial attorney plus a showing of substantial prejudice to defendant, without which the outcome probably would have been different. *People v. Bland* (1978), 67 Ill. App. 3d 716, 384 N.E.2d 1380.

■■ Defendant here has failed to establish either part of this dual test. The record discloses that both prior to trial and during trial appointed counsels' representation was competent and skillful. Prior to trial, counsel presented many motions, including motions to bar use of defendant's previous criminal record and to suppress Mrs. Slivinski's identification. At trial, counsel presented a vigorous defense and offered an intelligent and logical closing argument on defendant's behalf. Defendant has offered only a few examples of counsels' ineffective representation. He complains of their failure to resist the introduction of hearsay testimony. We already have noted that the testimony in question was not hearsay and therefore was properly introduced. Defendant complains that counsel did not

examine Mrs. Slivinski about her failure to wear glasses on the morning of the crime. In view of her positive and detailed description of defendant, counsels' strategy in not pursuing her failure to wear glasses appears to have been sound. Moreoever, although a defense counsel is bound to exercise a reasonable degree of care, skill, and diligence in representing a defendant, a review of such representation does not extend to matters involving the exercise of judgment, discretion, or trial tactics, and errors in judgment or trial strategy do not establish incompetency. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) Defendant points out that during the trial he requested and was denied appointment of a bar association attorney. We do not believe, however, that defendant's request for new counsel is of any significance in determining the effectiveness of his counsels' representation. The record demonstrates that defendant received effective assistance of counsel. Additionally, inasmuch as the evidence of defendant's guilt was overwhelming, he has failed to establish any prejudice by virtue of counsels' representation.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McGILLICUDDY, P. J., and RIZZI, J., concur.