# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 86A

APRIL TERM, A.D. 2015

July 16, 2015

GREGORY M. TOTH,

Appellant
(Defendant),

v.

S-14-0213

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Thomas W. Rumpke, Judge*

*Representing Appellant:*
Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel. Argument by Ms. Olson.

*Representing Appellee:*
Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Joshua C. Eames, Assistant Attorney General. Argument by Mr. Eames.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.***

**\*The opinion published in *Toth v. State* on June 17, 2015, WL 376605, is amended by this opinion. The earlier opinion has no further force or effect.**

[¶1]    Gregory M. Toth waited outside a gas station, trying to get a ride out of Gillette, Wyoming, on a cold fall morning in October 2013. As luck would have it, Ivan Aguilar pulled up in a pickup and left it running while he went inside. Mr. Toth got in and drove off, intending to drive south until the truck ran out of gas and then abandon it. The vehicle was quickly reported stolen, law enforcement gave chase, and Mr. Toth was apprehended. A jury found Mr. Toth guilty of felony theft, and he appeals. We affirm.

## ISSUES

[¶2]    We restate the issues as follows:

    1.    Was there sufficient evidence for the jury to reasonably conclude that Mr. Toth intended to dispose of the vehicle in a manner that made it unlikely the owner would recover it?

    2.    Did the district court abuse its discretion under W.R.Cr.P. 16 when it decided not to impose sanctions for the State's discovery violation?

    3.    Did the district court abuse its discretion under W.R.E. 609 when it allowed evidence of Mr. Toth's prior felony conviction?

    4.    Did the district court abuse its discretion and violate Mr. Toth's constitutional right when it prohibited defense counsel from questioning Officer Dillard about Mr. Toth's "nonstatements" made during his interview following his arrest?

    5.    Did Mr. Toth waive his right to challenge the district court's response to the jury question under the invited error doctrine?

## FACTS

[¶3]    In the early morning hours of October 5, 2013, Ivan Aguilar pulled his Pro Built Homes company truck and attached trailer into a Shell gas station outside Gillette, Wyoming. He left the vehicle running while he went inside to get some coffee and food.

[¶4]    Gregory Toth was at the gas station because he "had nowhere else to go." He "thought that people were after [him]," and asked a gentleman for a ride out of town. The gentleman declined, and as Mr. Toth was pacing in front of the station, he noticed Mr. Aguilar's company truck running with the door open. He climbed in and drove

1

away. He testified, "My plan was to get out of town and drive as far south as I could until I ran out of gas and abandon the vehicle on the side of the road or in a parking lot and keep, keep going." Mr. Toth testified to being under the influence of methamphetamine at the time, which "confuses me and I have audio and visual hallucinations. . . . I -- it makes my decision process wrong."

[¶5] Pursuant to a be on the lookout (BOLO) report for the stolen vehicle, a patroller with the Campbell County Sheriff's Department identified the vehicle and pursued Mr. Toth for approximately twenty minutes before Mr. Toth ran the vehicle off an unpaved and snow-covered rural road and got stuck. Mr. Toth was charged with felony theft, Wyo. Stat. Ann. § 6-3-402(a) (LexisNexis 2013), which provides: "A person is guilty of theft if he knowingly takes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the other person of the property."

[¶6] At trial, the State contended that Mr. Toth's intention of taking the truck, driving it until it ran out of gas, and then abandoning it met the statutory definition of "deprive:" "To dispose of the property so as to make it unlikely that the owner will recover it." Wyo. Stat. Ann. § 6-3-401(a)(ii)(B) (LexisNexis 2013).

[¶7] The State called Officer Dillard of the Gillette Police Department, who was the first responder to the stolen vehicle report and who later interviewed Mr. Toth while he was in custody. Officer Dillard testified that during the interview, Mr. Toth admitted he had taken the truck and attached trailer, and "he told me that [he] was just trying to get out of town[.]" On cross-examination, Officer Dillard testified that at the time of the interview, Mr. Toth "was exhibiting behaviors that are similar to someone under the influence of a controlled substance." Officer Dillard testified that Mr. Toth was exhibiting "twitchiness, making nonstatements, things like that that made me believe he was under the influence." When Mr. Toth's defense counsel inquired what type of "nonstatements" Mr. Toth was making, the district court sustained the State's objection on hearsay grounds. On re-direct, Officer Dillard testified with respect to Mr. Toth's signs of intoxication: "I did not believe that his being under the influence with what he was on was affecting his speech or the way he was talking to me[,]" and "It did not appear to affect the way he was recalling. The questions I asked him it did not appear as though he had any type of memory loss[.]"

[¶8] At trial, Mr. Toth relied on his self-induced intoxication to defeat the specific intent necessary for felony theft. Following the State's case-in-chief, Mr. Toth prepared to take the stand. The following exchange regarding the use of Mr. Toth's prior felony conviction occurred outside the presence of the jury:

> [Defense counsel]: Your Honor -- and I don't know if this is an appropriate time for this but when we were at the sidebar

2

[the prosecutor] referred to a [W.R.E.] 609 inquiry. On December 3, 2013, the defense made a demand for specific discovery. No. 2 in that demand was for a true, correct and complete copy of the defendant's prior criminal record. The existence of which is known or by the exercise of diligence may become known to the attorney for the State.

That has not been provided to us at any time during the discovery of this case and we object to any, any 609 evidence coming in if my client testifies since we have not received that criminal history from the State.

. . . .

Court: [Defense counsel], the discovery in this case -- while the matter should have been -- you should have got a criminal history in response to your discovery request. We're here in trial and I understand -- I'm going to inquire of Mr. Toth here in a few minutes. I understand he wants to testify.

[The prosecutor] is going to be allowed to ask him the questions. In light of asking him questions, and one of them is were you ever convicted of a felony and your -- the purpose of [the prosecutor's] inquiry beforehand is he may not be a qualifying felony. So what I will do at this time is I'm going to overrule your motion.

. . . .

Court: All right. Mr. Toth, I need to go over some issues with you outside the presence of the jury before we go any further. You heard me tell the jury about your right to remain silent. Do you understand that right?

. . . .

Court: Okay. I'm going to do some inquiry on your convictions before I hand it over to the prosecutor because I'm a little concerned about this issue with the criminal history not being provided. When was your last conviction, Mr. Toth?

Defendant: For a felony?

3

Court: For a felony, I'm sorry.

Defendant: 1999.

Court: Do you know when you were released from your sentence on that?

Defendant: July of '07. I think I might be a couple of months off but it was in '07.

Court: Okay. Has there been a pardon, an annulment or certificate of rehabilitation or anything done with that felony?

Defendant: No, Your Honor.

Court: [Defense counsel], are you aware of the conviction? I'm going to direct this question to you. Do you know what the conviction is?

[Defense counsel]: Yes, I do.

Court: Okay. Does it involve an allegation of dishonesty?

[Defense counsel]: Should I just tell you what it is, Your Honor?

Court: Sure.

[Defense counsel]: It's burglary.

Court: [Prosecutor], I anticipate when Mr. Toth testifies you'll ask him if he's been convicted of a felony within the last ten years.

[Prosecutor]: Well, I don't know that he's been convicted within the last ten years, but if he's been released from custody in regards to a felony conviction within the last ten years and I will ask the nature of the felony offense in which that is.

Court: I'll allow those two questions. You can ask him if he's been convicted of a felony and you can ask him the name of

4

the offense only. We're not going to get into any of the facts of it. This is not a claim of truthfulness. Mr. Toth, do you understand that?

[¶9]   The State asked its two questions of Mr. Toth regarding his prior felony conviction, in addition to a series of other questions. In closing argument, the State raised the burglary conviction again: "Determining credibility in this particular matter, Mr. Toth has a prior felony burglary charge. Does that affect his credibility as a witness?" And in its rebuttal closing argument, the State once again broached the issue of credibility in relation to Mr. Toth's prior burglary conviction: "Mr. Toth who has motive and bias in regards to this case, in determining credibility, looking at his statements versus the evidence, taking into account the prior felony burglary, in regards to determining credibility. . . ."

[¶10]   Prior to closing arguments, the district court instructed the jury on the elements of theft in Jury Instruction No. 10, explaining:

> The elements of the crime of theft as charged in this case are, one, on or about the 5th day of October, 2013, two, in Campbell County, Wyoming, three, the defendant Gregory M. Toth, four, knowingly took or exercised unauthorized control over the property of another person, five, with the purpose of depriving the other person of the property and, six, the value of the property is $1,000 or more.

> If you find from your consideration of all of the evidence that each of these elements has been proved beyond a reasonable doubt then you should find the defendant guilty. If on the other hand you find from your consideration of all of the evidence that any of these elements has not been proved beyond a reasonable doubt then you should find the defendant not guilty.

The district court instructed the jury on the statutory definition of "deprive." It also instructed the jury as to the lesser-included offense of unauthorized use of a vehicle.

[¶11]   Additionally, because Mr. Toth's defense was that he was too intoxicated to form the specific intent required for theft, the district court gave Mr. Toth's proposed self-induced intoxication jury instruction:

> [I]f you find that the defendant at the time of the alleged taking or alleged exercising unauthorized control of the property was suffering from self-induced intoxication to such

a degree that there is a reasonable doubt in your minds whether the defendant possessed the mental ability to form the intention to deprive, as defined in Instruction 12, the other person of the property then you should find the defendant not guilty of the crime of theft.

[¶12] On two different occasions during the trial, the district court asked Mr. Toth's counsel whether he wished to include a specific intent instruction, which he declined.

[¶13] The jury deliberated for approximately two hours and forty-five minutes before it sent out the following question: "Do we only consider the original purpose of the taking of the equipment or do we consider the entire event[?]" When the district court questioned the attorneys concerning the appropriate response, Mr. Toth's attorney made the following recommendation: "Your Honor, as I sat here and thought about it my response to the question would be to refer them to the elements instruction as previously given." The district court stated that it would respond in written form to the jury's question: "In response to your inquiry, the jury should consider all the instructions previously given including but not limited to the instructions defining the offenses of theft and unauthorized use of a vehicle." Approximately forty-five minutes later, the jury returned a guilty verdict for felony theft.

[¶14] Mr. Toth timely filed this appeal.

## DISCUSSION

### I. Was there sufficient evidence for the jury to reasonably conclude that Mr. Toth intended to dispose of the vehicle in a manner that makes it unlikely the owner would recover it?

[¶15] Mr. Toth argues there was insufficient evidence to prove that when he took the truck, he intended to deprive the owner of possession, that is, to dispose of it in a manner that would make its recovery unlikely. When reviewing whether the State provided sufficient evidence to meet its burden, this Court applies the following standard:

> We examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard applies whether the supporting evidence is direct or circumstantial.

6

*Andersen v. State*, 2014 WY 88, ¶ 23, 330 P.3d 256, 263 (Wyo. 2014) (quoting *Guerrero v. State*, 2012 WY 77, ¶ 14, 277 P.3d 735, 738-39 (Wyo. 2012)).

[¶16]   "Conviction with respect to a crime involving an element of 'specific intent' requires the State to prove that the defendant intended to commit some further act, or achieve some additional purpose, beyond the prohibited conduct itself." *Wetherelt v. State*, 864 P.2d 449, 452 (Wyo. 1993). "A jury may properly infer larcenous[1] intent from circumstantial evidence, such as the defendant's words and conduct." *Pena v. State*, 2013 WY 4, ¶ 39, 294 P.3d 13, 21 (Wyo. 2013) (citing *Jones v. State*, 2012 WY 82, ¶ 27, 278 P.3d 729, 735-36 (Wyo. 2012)). "'The wrongful taking of another's property with no apparent intention of returning it, and in the absence of any explanatory circumstances' can support a finding of intent to deprive." *Id.* (quoting *Wells v. State*, 613 P.2d 201, 204 (Wyo. 1980)). "The State is not required to produce direct evidence of the defendant's intent to deprive, because that would impose a nearly impossible burden to satisfy in many cases." *Id.* (citing *Jones*, 2012 WY 82, ¶ 27, 278 P.3d at 735-36).

[¶17]   Mr. Toth argues that his stated intent of driving the vehicle until it ran out of gas and then abandoning it by the side of the road or in a parking lot is insufficient evidence to support the jury's conclusion that he intended to dispose of the vehicle so as to make its recovery by the owner unlikely. In *State v. Davis*, 38 N.J.L. 176, 178-79 (N.J. 1875), the court squarely addressed the issue of abandonment in the context of larceny.

> [F]raudulently taking the personal property of another without his consent, and with no intent, at the time of taking, to return the same, is evidence of such intent to deprive the owner of his property, that a jury not only could, but should find the taker guilty of larceny.
>
> It is not a mere temporary taking which may consist with an intent to return, but a taking what may result by a natural and immediate consequence in the entire loss and deprivation of the property to the owner. An abandonment to mere chance is such reckless exposure to loss that the guilty party should be held criminally responsible for an intent to lose.
>
> If a person take another's watch from his table, with no intent to return it, but for the purpose of timing his walk to the station to catch a train, and when he reaches there leaves it on

---

[1] "Larceny" and "theft" are synonymous in the historical context of Wyo. Stat. Ann. § 6-3-402. The term "larceny" was replaced by "theft" in the 2013 legislative session. 2013 Wyo. Sess. Laws, ch. 191, §2 at 485.

the seat, for the owner to get it back or lose it, as may happen. If a man take another's axe with no intent to return it, but to take it to the woods to cut trees, and after he has finished his work cast it in the bushes, at the owner's risk of losing it, such reckless conduct would be accounted criminal. It is true that the probability of finding the horse and wagon may be greater than that of recovering the watch or axe, because they are larger and more difficult to conceal, but the intent is not to be measured by such nice probabilities; rather by the broader probability that the owner may lose his property, because the taker has no purpose of ever returning it to him.

Wyoming cases also adopt this approach.

[¶18] In *Wells v. State*, 613 P.2d 201 (Wyo. 1980), Mr. Wells was picked up while hitchhiking, and with the owner's consent, was allowed to sleep alone in the vehicle overnight. *Id*. at 202. The keys were left in the truck, and the next morning the vehicle was gone. *Id*. The vehicle was eventually recovered in Colorado, along with a backpack, a prescription bottle of lotion, and pills identified as belonging to Mr. Wells. *Id*. After a jury trial, Mr. Wells was convicted of grand larceny for theft of the motor vehicle. *Id*. at 201. On appeal, Mr. Wells challenged, *inter alia*, the sufficiency of evidence proving he had the intent necessary for larceny.[2] *Id*. at 203. We affirmed, holding, "no apparent intention of returning [the vehicle], and in the absence of any explanatory circumstances, evidences an intent to deprive the owner permanently of his property." *Id*. at 204 (citing *State v. Jackson*, 420 P.2d 270, 273 (Ariz. 1966)).

[¶19] Recently, in *Pena*, Mr. Pena argued the jury had insufficient evidence to conclude that he acted with the specific intent to deprive[3] under Wyoming's larceny statute. Mr. Pena stole a 2005 Ford truck from a residence in Dayton, Wyoming, and traveled to visit his girlfriend in Rapid City, South Dakota. *Pena*, 2013 WY 4, ¶ 6, 294 P.3d at 15. He removed company decals from the vehicle, treated the vehicle as if it were his own, and communicated to his girlfriend and her mother that the truck belonged to his mother. *Id*. After approximately one month in Rapid City, Mr. Pena headed south to Louisiana to visit his father. *Id*. Mr. Pena's girlfriend testified that following his departure, she was

---

[2] *Wells* was decided under an older version of the larceny statute which provided: "Whoever feloniously steals, takes and carries, leads or drives away the personal goods of another of the value of one hundred dollars ($100.00) or upwards, is guilty of grand larceny, and shall be imprisoned in the penitentiary not more than ten (10) years." Wyo. Stat. Ann. § 6-7-301 (1977).

[3] Mr. Pena was convicted under a different statutory definition of deprive than Mr. Toth: "To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value or with intent to restore only upon payment of reward or other compensation[.]" Wyo. Stat. Ann. § 6-3-401(a)(ii)(A) (LexisNexis 2013).

able to access his email account where she found advertisements listing parts of the truck for sale, stating "[t]hey came [on] my 2005 Ford F250." *Id*. at ¶ 7.

[¶20] Mr. Pena was stopped in Louisiana pursuant to a BOLO notice. *Id*., ¶ 8, 294 P.3d at 15. Initially, Mr. Pena indicated that the truck belonged to his boss, but then conceded it was stolen, and did not mention any plan of returning it. *Id*. at ¶¶ 9-10. He was charged with felony larceny under Wyo. Stat. Ann. § 6-3-402(a), and the truck was returned to its original owner. *Id*. at ¶¶ 11-12.

[¶21] At trial, the State argued that the evidence showed Mr. Pena intended to deprive the owner of the truck for the following reasons:

- He had the vehicle for three months by the time it was recovered in Louisiana.

- He removed the Cow-Tran decals to make the vehicle less easily identifiable.

- He inconsistently claimed the truck belonged to his mother, his boss, and his mother's fiancé.

- He probably sold the truck's grille guard through the ad placed on Craigslist, and tried to sell other parts by the same means. A toolbox was missing from the truck when it was located, suggesting that it might also have been sold on Craigslist.

- He told Deputy Hoyt, "I made it this far," suggesting that he would have kept the truck as long as he could.

- He put 14,000 miles on the vehicle.

*Id*., ¶ 16, 294 P.3d at 16.

[¶22] This Court found the evidence sufficient to prove Mr. Pena had the specific intent to deprive, holding "[a] jury may properly infer larcenous intent from circumstantial evidence, such as the defendant's words and conduct." *Id*., ¶ 39, 294 P.3d at 21 (citing *Jones*, 2012 WY 82, ¶ 27, 278 P.3d at 735-36). "'The wrongful taking of another's property with no apparent intention of returning it, and in the absence of any explanatory circumstances' can support a finding of intent to deprive." *Id*. (quoting *Wells*, 613 P.2d at 204).

[¶23] Mr. Toth clearly admitted that he intended to drive the vehicle until it ran out of gas and then abandon it. Though both *Wells* and *Pena* were decided under different statutory language, their holdings are no less applicable to Mr. Toth's situation. Similar

9

to Mr. Wells and Mr. Pena, Mr. Toth stated no intent to return the property to its owner, and the possibility that it might have been returned is not enough, where the "broader probability [is] that the owner may lose his property, because the taker has no purpose of ever returning it to him." *Davis*, 38 N.J.L. at 179. We find there was sufficient evidence for the jury to reasonably conclude that Mr. Toth possessed the requisite intent to deprive.

## II. Did the district court abuse its discretion under W.R.Cr.P. 16 when it decided not to impose sanctions for the State's discovery violation?

[¶24] Mr. Toth made a written demand for disclosure of his prior criminal record pursuant to W.R.Cr.P. 16(a)(1)(B).[4] The State concedes that it did not comply with its Rule 16(a)(1)(B) duty to disclose copies of the defendant's criminal record. Although it is troubling that the State is unwilling or unable to explain its failure to comply with this clear discovery obligation, we find that the trial court did not abuse its discretion when it declined to impose sanctions.

[¶25] A "trial court has discretion in determining the proper sanction for a party's violation of its discovery responsibilities." *State v. Naple*, 2006 WY 125, ¶ 8, 143 P.3d 358, 360-61 (Wyo. 2006) (citing *Lawson v. State*, 994 P.2d 943, 946 (Wyo. 2000)). "The decision of the court in addressing the breach of a discovery order will be set aside only for an abuse of discretion." *Id.* (quoting *Lindsey v. State*, 725 P.2d 649, 655 (Wyo. 1986)). "In determining whether the trial court abused its discretion, 'the ultimate issue is whether or not the court could reasonably conclude as it did.'" *Ceja v. State*, 2009 WY 71, ¶ 11, 208 P.3d 66, 68 (Wyo. 2009) (quoting *Naple*, 2006 WY 125, ¶ 8, 143 P.3d at 361); *see also* W.R.Cr.P. 16(d)(2).[5]

[¶26] The district court explained:

---

[4] W.R.Cr.P. 16(a)(1)(B) provides:

> Upon written demand of the defendant, the state shall furnish to the defendant such a copy of the defendant's prior criminal record, if any, as within the possession, custody, or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the state.

[5] W.R.Cr.P. 16(d)(2) provides:

> If at any time during the course of the proceedings, it is brought to the attention of the court that a party has failed to comply with this rule, the court *may* order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

(Emphasis added).

> [T]he basis of my ruling is that the information that's being asked about was available to the defendant. It wasn't something that was by surprise. It's not well-taken, the argument [by the State] that you needed to file a motion to compel.
>
> . . . .
>
> This is information that I can't see where you were prejudiced. Your client knew this information, [Defense Counsel], and that's my ruling.

When asked by the district court, both Mr. Toth and his attorney stated that they were aware of Mr. Toth's previous felony burglary conviction. Mr. Toth was therefore not surprised by the fact that he had a prior felony conviction.

[¶27] Mr. Toth argues that he was nevertheless prejudiced by the State's failure to disclose his prior criminal record because he was surprised by the State's intent to use the evidence at trial. He argues that his testimony was imperative to highlighting his lack of intent to deprive, and his defense strategy relied on Mr. Toth's testimony without the State bringing to light his prior criminal record.

[¶28] "'[T]he ultimate issue is whether or not the court could reasonably conclude as it did.'" *Ceja*, 2009 WY 71, ¶ 11, 208 P.3d at 68 (quoting *Naple*, 2006 WY 125, ¶ 8, 143 P.3d at 361). We conclude that the district court acted within the bounds of reason when it imposed no sanction for the State's discovery violation based on the fact that Mr. Toth and his counsel were fully aware of the former conviction.

### III. Did the district court abuse its discretion under W.R.E. 609 when it allowed evidence of Mr. Toth's prior felony conviction?

[¶29] The related issue is whether the district court abused its discretion under W.R.E. 609 when it allowed evidence of Mr. Toth's prior conviction at trial. The State argues that in the absence of a proper objection, plain error is the appropriate standard. Though Mr. Toth's 609 objection was couched in the discovery violation, we treat it as a valid objection, preserving the issue for review under our abuse of discretion standard. *See Majors v. State*, 2011 WY 63, ¶ 24, 252 P.3d 435, 441 n.3 (Wyo. 2011) (The state argued for plain error, however the court recognized the validity of the objection because it was clearly made on the record, and the district court's determination of the admissibility of the evidence was "somewhat unusual."). "We review claimed error concerning the improper admission of evidence for abuse of discretion and will not reverse the trial court's decision absent a clear abuse." *Szymanski v. State*, 2007 WY 139, ¶ 15, 166 P.3d

879, 883 (Wyo. 2007) (citing *Bromley v. State*, 2007 WY 20, ¶ 8, 150 P.3d 1202, 1206 (Wyo. 2007)). "A trial court abuses its discretion when it could not have reasonably concluded as it did. In this context, 'reasonably' means sound judgment exercised with regard to what is right under the circumstances and without being arbitrary or capricious." *Id.* (internal citation omitted). Upon a finding of abuse of discretion, we must then determine whether the error was prejudicial. "'Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made.'" *Mersereau v. State*, 2012 WY 125, ¶ 17, 286 P.3d 97, 106 (Wyo. 2012) (quoting *Rolle v. State*, 2010 WY 100, ¶ 9, 236 P.3d 259, 264 (Wyo. 2010)).

[¶30] W.R.E. 609(a) provides, in relevant part, that "[f]or the purposes of attacking the credibility" of a criminal defendant, a prior conviction shall be placed into evidence if (1) "the crime was punishable by death or imprisonment in excess of one (1) year under the law under which the [defendant] was convicted; and (2) "the court determines that the probative value of admitting th[e] evidence outweighs its prejudicial effect to the accused[.]" W.R.E. 609(a)(1). If the State is able to satisfy these two criteria, Rule 609(b) requires:

> Evidence of a conviction under this rule is not admissible if a period of more than ten (10) years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten (10) years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

The Rule 609(b) time calculation requires consideration of two dates: (1) the date of conviction, and (2) the date of release from confinement. If the later of these dates falls within ten years of the date of trial, 609(b) is satisfied. *Lee v. State*, 2 P.3d 517, 525 (Wyo. 2000). If both dates fall outside of the ten-year timeline, before admitting the evidence "[u]nder Rule 609(b), the court must view specific facts and circumstances and decide not only that the probative value outweighs the prejudicial effect, but also that the probative value is 'substantially' outweighed." *Vaupel v. State*, 708 P.2d 1248, 1250 (Wyo. 1985).

[¶31] "Rule 609(a) requires an initial balancing of probative value and prejudicial effect[.]" *Vaupel*, 708 P.2d at 1250. In *Miller v. State*, 784 P.2d 209, 211 (Wyo. 1989),

12

we held that "W.R.E. 609(a) places no burden upon the court to makes findings [of whether the prior conviction is a qualifying conviction and probative value outweighs prejudicial effect] to support the admission of prior convictions until the defendant enters a proper objection." *Id.* However, we held that once a defendant objects to the admission of prior conviction evidence under Rule 609(a), the "trial court's obligation" to make findings to support the admission of prior convictions becomes "clear and unequivocal." *Id.* (citing *Bradley v. State*, 635 P.2d 1161, 1165 (Wyo. 1981)).

[¶32] A defendant's decision to take the stand and expose himself to impeachment and possible jury bias because of prior conviction evidence is a difficult decision. As the District of Columbia Court of Appeals has explained:

> When the defendant is impeached by a prior conviction, the question of prejudice, as Congress well knew, is not *if*, but how much. Congress in Rule 609(a)(1) therefore instructed the courts to admit evidence of a prior felony conviction only if . . . the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant.

*United States v. Lipscomb*, 702 F.2d 1049, 1062-63 (D.C. Cir. 1983) (emphasis in original) (internal quotation marks and citations omitted). "This 'special balancing test' is used because the 'defendant faces a unique risk of prejudice—i.e., the danger that convictions that would be excluded under [Rule 404] will be misused by a jury as propensity evidence despite their introduction solely for impeachment purposes.'" *United States v. Smalls*, 752 F.3d 1227, 1240 (10th Cir. 2014) (quoting Fed.R.Evid. 609, advisory committee notes (1990 Amendments)).

[¶33] Here, the district court erred when it relieved the State of its burden of producing information on the type of felony conviction and dates of the conviction and release from confinement when it inquired directly of Mr. Toth, outside of the presence of the jury, about the dates and type of felony.[6] *See Bradley*, 635 P.2d at 1165 (Upon defendant's objection to prior conviction evidence, "[t]he prosecutor would have then had to bear the burden of establishing its admissibility[.]"); *Lipscomb*, 702 F.2d at 1063 ("[T]he government at a minimum must furnish the district court with the name of the crime (to show that it is a felony) and the date of the conviction (to show that the conviction is less than 10 years old)."). When the district court inquired into Mr. Toth's conviction and release dates, it was informed by Mr. Toth that the date of release from confinement was

---

[6] Had the State complied with W.R.Cr.P. 16, such information would have been available to the district court prior to trial, and it is likely the 609 issue would have been addressed earlier.

2007 (within 10 years), and that the crime was felony burglary (a qualifying conviction).[7] At no point did the district court make any on-the-record findings of the probative value versus prejudicial effect of admitting Mr. Toth's prior burglary conviction. Accordingly, we find the district court abused its discretion in admitting evidence of Mr. Toth's prior conviction under W.R.E. 609.

[¶34]  Nevertheless, we cannot conclude Mr. Toth was prejudiced by the inclusion of the evidence.  Though the admission may have affected his credibility with the jury, the fact remains that Mr. Toth himself admitted that at the time he took the vehicle he intended to drive it until it ran out of gas and then abandon the vehicle, as discussed *see supra* ¶¶ 4, 23.  Considering Mr. Toth's own admission of his intent, we cannot say that the judgment was "'substantially swayed by the error.'"  *Warner v. State*, 2001 WY 67, ¶ 22, 28 P.3d 21, 28 (Wyo. 2001) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed 1557  (1946)).  We conclude that the district court's abuse of discretion in admitting Mr. Toth's prior conviction was harmless and does not warrant reversal.

### IV.  Did the district court abuse its discretion and violate Mr. Toth's constitutional right when it prohibited defense counsel from questioning Officer Dillard about Mr. Toth's "nonstatements" made during his interview following his arrest?

[¶35]  At trial, the district court prevented Mr. Toth's attorney from questioning Officer Dillard as to the content of Mr. Toth's "nonstatements," citing hearsay grounds.  Our standard for review of evidentiary rulings is abuse of discretion.  *Wimbley v. State*, 2009 WY 72, ¶ 10, 208 P.3d 608, 611 (Wyo. 2009).

> A trial court's rulings on the admissibility of evidence are entitled to considerable deference, and, so long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal.  The appellant bears the burden of showing an abuse of discretion.  Even when a trial court errs in an evidentiary ruling, we reverse only if the error was prejudicial.  The appellant must show a reasonable probability that, without the error, the verdict might have been different.

*Wise v. Ludlow*, 2015 WY 43, ¶ 42, 346 P.3d 1, 12 (Wyo. 2015) (quoting *Glenn v. Union Pacific R.R. Co.*, 2011 WY 126, ¶ 12, 262 P.3d 177, 182 (Wyo. 2011)).  Limits on a

---

[7] When that discussion occurred, Mr. Toth had indicated that he understood his right not to testify and intended to testify.  The Court then asked him questions to establish the admissibility of the conviction. This was improper.  Although Mr. Toth had indicated that he intended to waive his right to remain silent and testify, he had not yet done so.  It was the State's duty to establish the foundation for his conviction. However, as the situation played out, the questions would have been put and answered anyway because Mr. Toth did in fact testify.  Nevertheless, this seems a perilous situation for a court to put itself in.

defendant's constitutional right to present a complete defense are reviewed *de novo*. *Bush v. State*, 2008 WY 108, ¶¶ 58-59, 193 P.3d 203, 217 (Wyo. 2008); *Hannon v. State*, 2004 WY 8, ¶¶ 13-14, 84 P.3d 320, 328 (Wyo. 2004).

## A. Hearsay ruling

[¶36] On cross-examination, Officer Dillard testified that Mr. Toth was exhibiting "[t]witchiness, making nonstatements, things like that that made me believe he was under the influence." Mr. Toth's counsel attempted to elicit the content of what presumably were Mr. Toth's incoherent babblings to further support his self-induced intoxication defense. The State objected, first arguing that the question was "asked and answered," then arguing hearsay. The district court sustained the objection, ruling that the nonstatements were hearsay.

> The repetition of the definition of hearsay is familiar, if not always understood. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. W.R.E. 801(c). A statement is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it intended by him as an assertion. W.R.E. 801(a). A declarant is a person who makes a statement. W.R.E. 801(b). The definition of assertion is not stated in the rule. However, a suitable definition declares an assertion is "*to say that something is so*, e.g. that an event happened or that a condition existed." E Cleary, McCormick on Evidence § 246 (3d ed. 1984) (emphasis in original).

*Armstrong v. State*, 826 P.2d 1106, 1117-1118 (Wyo. 1992) (emphasis in original) (some quotation marks omitted).

[¶37] Here, the "nonstatements," by virtue of being nonstatements, were not assertions. *See Humphrey v. State*, 962 P.2d 866, 872 (Wyo. 1998) (Testimony from two witnesses that as daughter was tucked into bed, daughter asked father if he wanted to "suck the juices" out of her vagina, did not assert that any event happened or that a condition existed, and thus was not a hearsay.) Furthermore, by the very fact that they were "nonstatements," we cannot conceive how Officer Dillard's testimony could have been used to prove the "truth of the matter asserted." *See Proffit v. State*, 2008 WY 102, ¶ 21, 191 P.3d 963, 970 (Wyo. 2008) (testimony that a non-witness had stated that a drug deal had gone bad was not hearsay since it was not offered to prove the truth of the drug deal failure); *Armstrong*, 826 P.2d at 1119 (witness testimony about her statement to the victim and bar patrons that she was afraid appellant would return with a gun was not hearsay because it was not offered to prove that appellant went home to get a gun).

[¶38]  Nonsensical statements and those that are patently untrue in light of observable conditions have historically been received to prove insanity, competency, testamentary capacity, and other issues relating to mental state.  *People v. Vanda*, 444 N.E.2d 609, 614-15 (Ill. App. Ct. 1982) (defendant's letters indicating that he was helping run the jail or that he was a prison fireman admissible to show insanity); *People v. Garlick*, 360 N.E.2d 1121, 1126 (Ill. App. Ct. 1977) (defendant's out-of-court statements admissible as nonhearsay evidence of mental state); *People v. Chancy*, 414 N.E.2d 1239, 1242-43 (Ill. App. Ct. 1980) (the words "Fantastic, Super Dopee and Me" written on blackboard at scene of crime were nonhearsay); *Sollars v. State*, 316 P.2d 917, 923 (Nev. 1957) (defendant's "classic paranoid letters" admissible as non-hearsay evidence of mental state); *Chase v. State*, 369 P.2d 997, 1004 (Alaska 1962), *overruled on other grounds by Schade v. State*, 512 P.2d 907, 910-911 (Alaska 1973) (defendant's out-of-court statements admissible on insanity issue).  For a historical perspective, *see* 1, 3, John H. Wigmore, *Evidence* §§ 228, 1738 (1923).

[¶39]  Nonsensical or delusional statements may be as clear an indication that the utterer is not in his right mind as physical signs and symptoms or bizarre behavior, and they can thus be verbal acts or words of independent legal significance which are not hearsay. *See* 2 *McCormick on Evidence* § 249 (Kenneth S. Broun ed., 7th ed. 2013); Mueller and Kirkpatrick, *Federal Evidence* §8:22 (4th ed. 2013) (a statement that one is Napoleon may be admissible because it proves a lack of connection to reality regardless of who the speaker thinks he is).  It appears that defense counsel wanted to utilize the "nonstatements" to show that his client was under the influence of a controlled substance to the extent that he could not form the specific intent to deprive required for a felony conviction.  The context makes it clear that the statements were such that they led the investigating officer to believe that Toth was under the influence of a controlled substance, and so no offer of proof was required.  W.R.E. 103 (error may be predicated upon exclusion of evidence if the substance was apparent from the context in which questions were asked).

[¶40]  The nonstatements were not hearsay; accordingly, the district court abused its discretion in excluding the testimony.

[¶41]  Nevertheless, we must consider whether the abuse was prejudicial to Mr. Toth. While further information of the "nonstatements" may have added to the jury's information regarding Mr. Toth's intoxication, the "nonstatements" were not the only evidence of Mr. Toth's intoxication presented at trial.  Mr. Toth testified that he was under the influence of methamphetamine at the time of the theft, that he heard voices in his head telling him it was okay to take the truck, and that methamphetamine "makes my decision process wrong."  Mr. Toth himself admitted at trial that when he took the truck he had formed the intent to drive it until it ran out of gas and then abandon it.  Officer Dillard himself testified he believed Mr. Toth was "under the influence."  Officer

16

Dillard's excluded testimony was but a fraction of the total evidence presented to the jury indicating the extent of Mr. Toth's intoxication and his ability to form the requisite intent to deprive. Though the district court abused its discretion, we cannot conclude that without the exclusion of the evidence the verdict might have been different.

## B. Constitutional right to present a complete defense

[¶42] Mr. Toth argues that the district court's decision to bar Officer Dillard's testimony regarding Mr. Toth's nonstatements implicates his constitutional right to present a defense as required by the Sixth and Fourteenth Amendments to the United States Constitution and Wyo. Const. art. 1, § 10. We recently explained this right in *McDowell v. State*, 2014 WY 21, ¶ 25, 318 P.3d 352, 360 (Wyo. 2014):

> A defendant is entitled to present "competent and reliable" evidence which is necessary to present a meaningful defense. *See Hannon* [*v. State*, 2004 WY 8], ¶ 63, 84 P.3d [320,] 347 [(Wyo. 2004)]. This right is limited by the "countervailing public interests" in the "integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process." *Taylor v. Illinois*, 484 U.S. 400, 414-415, 108 S.Ct. 646, 656, 98 L.Ed.2d 798 (1988).

[¶43] Mr. Toth makes the same argument for his constitutional claim as he does for the hearsay argument above. He claims that his defense of self-induced intoxication was undermined by the exclusion of Officer Dillard's testimony, and that the evidence was integral to revealing Mr. Toth's state of mind and his ability to form the specific intent to deprive. However, Mr. Toth was still able to elicit testimony from Officer Dillard to establish that Mr. Toth was indeed intoxicated when he was interviewed by the officer; furthermore, Mr. Toth testified that he was under the influence of methamphetamine at the time, he heard a voice telling him it was okay to take the vehicle, and the methamphetamine "makes my decision process wrong." Mr. Toth admitted that his intent at the time of entering the vehicle and driving it away was to drive it until it ran out of gas and then abandon it on the side of the road or in a parking lot. Officer Dillard testified that Mr. Toth was capable of answering questions and recalling the events underlying his theft when queried during his post-arrest interview. When the dust settled, the jury made the conclusion that Mr. Toth formed the requisite specific intent for felony theft. We cannot conclude that the exclusion of the evidence unfairly prejudiced the truth-determining function of the trial process.

> As this Court has long recognized, the United States and Wyoming constitutions do not guarantee that a criminal

17

defendant receive a perfect trial, but they do guarantee that he receive a fair trial. When applying that maxim, many errors that may occur at trials are not so pervasive as to deprive a defendant of his constitutionally guaranteed right.

*Mersereau*, 2012 WY 125, ¶ 70, 286 P.3d at 122 (internal citations omitted).

### V. Did Mr. Toth waive his right to challenge the district court's response to the jury question under the invited error doctrine?

[¶44] At the close of evidence, the district court asked Mr. Toth whether he wished to include a specific intent instruction for the jury. Later, during the instruction conference, the district court again asked Mr. Toth if he wished to include a specific intent instruction. Mr. Toth declined both of the court's invitations. During deliberations, the jury sent out the following question: "Do we only consider the original purpose of the taking of the equipment or do we consider the entire event[?]" The court asked Mr. Toth's attorney for a suggested response, to which he replied, "Your Honor, as I sat here and thought about it my response to the question would be to refer them to the elements instruction as previously given." Mr. Toth now argues that the district court's failure to respond to the jury question with a specific intent instruction was necessarily prejudicial and warrants reversal.

[¶45] "We reject attempts by a defendant to turn a trial strategy into an appellate error." *Ortiz v. State*, 2014 WY 60, ¶ 81, 326 P.3d 883, 899 (Wyo. 2014). "The doctrine of invited error prohibits a party from raising on appeal alleged trial court errors that were induced by that party's actions." *McIntosh v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 135, ¶ 54, 311 P.3d 608, 621 (Wyo. 2013) (internal quotation marks and citation omitted); *see also Pendleton v. State*, 2008 WY 36, ¶¶ 13-16, 180 P.3d 212, 217-18 (Wyo. 2008). Nevertheless, we have found room for review under limited circumstances.

> Even where a defendant has not only not objected, but has actually offered the offending [jury] instruction, the invited error doctrine allows for review where the instruction is "necessarily prejudicial." These cases reflect the confluence of W.R.Cr.P. 30(a), which states in part that "[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury is instructed, stating distinctly the matter to which the party objects and the grounds of the objection[,]" and W.R.Cr.P. 52(b), which states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not

18

brought to the attention of the court."  We have followed this rule for a long time.

*Snow v. State*, 2009 WY 117, ¶ 26, 216 P.3d 505, 513-14 (Wyo. 2009). (internal citations omitted).  Prior to considering whether the party was necessarily prejudiced under our invited error doctrine, we must consider whether the party intentionally relinquished or abandoned a known right.   The Tenth Circuit Court explained this threshold consideration in *United States v. Cornelius*, 696 F.3d 1307 (10th Cir. 2012):

> Under the invited error doctrine, this Court will not engage in appellate review when a defendant has waived his right to challenge a jury instruction by affirmatively approving it at trial.  "[A] party that has *forfeited* a right by failing to make a proper objection may obtain relief for plain error; but a party that has *waived* a right is *not* entitled to appellate relief."  *United States v. Cruz-Rodriguez*, 570 F.3d 1179, 1183 (10th Cir. 2009) (internal quotation marks, citation omitted).  "A waived claim or defense is one that a party has knowingly and intelligently relinquished; a forfeited plea is one that a party has merely failed to preserve."  *Wood v. Milyard*, [], 132 S.Ct. 1826, 1832 n. 4, 182 L.Ed.2d 733 (2012); *see also United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. McGehee*, 672 F.3d 860, 873 (10th Cir. 2012) ("Waiver is accomplished by intent, but forfeiture comes about through neglect." (quotation marks, citation, alterations omitted)).  "Nonwaivable rights are rare," such that waiver is only disallowed when there exists a "need to protect a public interest beyond that of the defendant or because of concern that undue, and unprovable, pressure may have been brought to bear on the defendant."  *United States v. Teague*, 443 F.3d 1310, 1316 (10th Cir. 2006).

*Id.* at 1319-20 (emphasis in original); *see also United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) ("Forfeiture is the failure to make a timely assertion of a right, whereas waiver is the 'intentional relinquishment or abandonment of a known right.'") (quoting *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993)).

[¶46]  In *Vigil v. State*, 859 P.2d 659, 661 (Wyo. 1993), the defendant was charged with second-degree murder and first-degree sexual assault. The jury acquitted him of sexual assault but convicted him of a lesser included offense of manslaughter. *Id.* at 661.  On appeal, the defendant argued that the manslaughter instruction was defective because it

included elements from an outdated version of the manslaughter statute, which used the terms "culpable neglect" and "criminal carelessness" instead of the recent statutory term "recklessly." *Id*. at 662. The State argued that because the instruction containing the repealed statutory language was proffered by the defendant, and he failed to object to it at trial, the doctrine of invited error precluded reversal based upon plain error. *Id*. at 664. This Court held that the omission was "necessarily prejudicial" and review was not precluded. *Id*. We concluded, "the jury instruction's neglect of the essential element of recklessly is prejudicial because it potentially allowed Vigil to be convicted of involuntary manslaughter without proof beyond a reasonable doubt of all elements of the crime." *Id*. (emphasis omitted).

[¶47]  Mr. Toth not only proffered the elements instruction for felony theft (which is not defective, unlike the instruction in *Vigil*) on two occasions during the trial, he declined the district court's offer to include the specific intent instruction he now argues should have been given in response to the jury question. Instead, in response to the jury question at trial, his counsel advised the district court to refer them back to the existing elements instruction. Mr. Toth affirmatively waived the error he now alleges, and we therefore conclude that he waived his right to appellate review under our invited error doctrine. *See, e.g.*, *Perez*, 116 F.3d at 845 (Defendant's attorney's indication that he did not believe it was necessary to instruct on the "overt act" element of conspiracy charge, "is an example of waiver because the record reflects that the defendant was aware of the omitted element and yet relinquished his right to have it submitted to the jury."). Our holding is distinguishable from the forfeiture in *Vigil*, where the original instruction itself was defective and the defendant merely failed to object to the defective instruction at trial. *See also Snow*, 2009 WY 117, ¶ 26, 216 P.3d at 513 ("Even where a defendant has not only not objected, but has actually offered the offending [jury] instruction, the invited error doctrine allows for review where the instruction is 'necessarily prejudicial.'"). Here, Mr. Toth not only declined two offers to include a specific intent instruction, but he approved of the response to the jury question, even though he now attempts to argue a different response should have been given. He took no steps to preserve his right to challenge the jury instructions, and therefore he waived his right to appellate review. Under such circumstances, the alleged error is not reviewable and we do not reach the question of whether Mr. Toth was necessarily prejudiced.

[¶48]  We affirm.

20