GRAY, Justice.
[¶1] Appellant Duane Lester Jackson was charged with three counts of first-degree sexual abuse of a minor. The jury convicted Mr. Jackson on Counts I and III. It acquitted him on Count II. The district court granted a judgment of acquittal on Count III. Mr. Jackson appeals his conviction on Count I claiming reversible error because the jury instructions contained identical elements for Counts I and II with nothing to differentiate one count from the other. The verdict form also failed to distinguish between Counts I and II. We term these contentions the "Description Issue." Mr. Jackson also argues the evidence was insufficient to convict him of first-degree sexual abuse. Finally, he alleges his trial counsel was ineffective. We conclude Mr. Jackson waived review of the Description Issue claims under the invited error doctrine, the evidence adduced at trial was sufficient to convict Mr. Jackson on Count I, and Mr. Jackson's counsel was not ineffective. We affirm.
ISSUES
[¶2] We rephrase the issues:
I. Did Mr. Jackson waive his right to appeal the jury instructions and verdict form under the invited error doctrine?
II. Was the evidence sufficient to convict Mr. Jackson of first-degree sexual abuse beyond a reasonable doubt on Count I?
III. Was Mr. Jackson denied a fair trial because of ineffective assistance of counsel?
FACTS
[¶3] A.D., a seven-year-old girl, resided in a two-bed motel room in Cheyenne, Wyoming, with her mother, sister and Mr. Jackson. A.D. confided in her grandmother that Mr. Jackson had sexually abused her more than once. Her grandparents reported these allegations to law enforcement, and an investigation was opened. The State charged Mr. Jackson with three felony counts of First-Degree Sexual Abuse of a Minor in violation of Wyo. Stat. Ann. § 6-2-314(a)(i) and (c). The Information described the three counts identically, without distinguishing facts. At trial, however, A.D. testified to three separate incidents of sexual intrusion: the first occurred on the bed; the second took place in the bathroom; and the third was digital penetration as opposed to sexual intercourse.
[¶4] At the close of the State's evidence, the district court commented on distinguishing the occurrences:
THE COURT: ... [E]ven if you take the victim's evidence sort of situationally, there is an incident on the bed, incident in the bathroom, that's two, but in what period of time and when? Those are very troubling, but, of course, the Wyoming Supreme Court has not put that burden on the State, and if it occurred one, two or more times in an identifiable time period, and here, you know, it seems identifiable, you know, I can't cut it out for that reason, I guess.
*986 The parties initially agreed to the jury instructions at the jury instruction conference. However, Mr. Jackson's counsel objected to the verdict form, arguing that under Heywood v. State , 2007 WY 149, 170 P.3d 1227 (Wyo. 2007) (abrogated on alternate grounds by Granzer v. State , 2008 WY 118, 193 P.3d 266 (Wyo. 2008) ), the verdict form was unacceptably vague:
[DEFENSE COUNSEL]: ... [W]e're running into the similar issue that they had in Heywood v. State , where how is the jury going to tell what the conduct was that he's actually being convicted of? There is no indication of what his conduct was in the verdict form that they would find him guilty of, which leads to confusion as to what he was actually convicted of. So I think that needs to be spelled out, what the allegation is, or what conduct actually constitutes the crime so that we know what they think happened.
Counsel explained, "I don't know what ... the allegations actually are," and then suggested that the vague descriptions of the underlying counts "need[ed] to be addressed in this verdict form."
[¶5] The district court expressed concern that adding additional language to the verdict form might "supply[ ] an allegation" that the State did not raise, but directed the parties to revise the verdict form and present amendments to the district court for consideration the next day. Before the jury instruction conference ended, the State proposed a different remedy-amending the jury instructions to include more detail as to the time and place of each count rather than changing the verdict form. Defense counsel renewed its objection, again citing Heywood , arguing additional specificity was needed in the verdict form:
[DEFENSE COUNSEL]: ... My recollection of Heywood was they wanted that in the verdict form, and the reasoning there was they didn't want to be amending the Information, but I'm not sure putting it in the instructions would really be amending the Information, so I guess if I could hold off on my argument there and I'll do some more research.
The district court again directed the parties to come to agreed upon language, "either in the verdict form or in the elements instruction," by the start of trial the next day. If the parties could not agree whether the defining language should be inserted in the jury instructions or in the verdict form, the district court instructed them to send separate versions "of the elements or verdict or whatever," and stated it would rule on competing versions at the start of the third day of trial.
[¶6] The parties were not able to agree on revised instructions, and each submitted separate jury instructions to the district court.[1] Neither submitted an alternate verdict form. The State then informed the court it agreed with the Defendant's jury instructions. The district court noted the defense counsel's proffered instructions "say the same thing [as the State's proposed instructions] but don't identify a location ...." The verdict form was not discussed further.
[¶7] The district court sentenced Mr. Jackson to a term of not less than twenty-five years in prison on Count I. Mr. Jackson timely appeals.
DISCUSSION
I. Did Mr. Jackson waive his right to appeal the jury instructions and verdict form under the invited error doctrine?
[¶8] Mr. Jackson argues the Description Issue-in Instructions 8 and 9 and in the verdict form-constitutes reversible error because it is not possible to determine the specific conduct that formed the basis for conviction under Count I. The State counters Mr. Jackson waived the Description Issue under the invited error doctrine because he proffered the instructions, and the doctrine applies equally to the verdict form.
A. Standard of Review
[¶9] "The doctrine of invited error prohibits a party from raising on appeal alleged trial court errors that were induced by that party's actions." Toth v. State , 2015 WY 86A, ¶ 45, 353 P.3d 696, 710 (Wyo. 2015)
*987 (quoting McIntosh v. State ex rel. Wyo. Workers' Safety & Comp. Div. , 2013 WY 135, ¶ 54, 311 P.3d 608, 621 (Wyo. 2013) ). We apply the invited error doctrine instead of plain error when a party has affirmatively waived a right or objection. Id. As explained by the Supreme Court in United States v. Olano :
Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the "intentional relinquishment or abandonment of a known right." Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake.
United States v. Olano , 507 U.S. 725, 733, 113 S. Ct. 1770, 1777, 123 L. Ed. 2d 508 (1993) (citations omitted). A party waives a right when he "knowingly and intelligently relinquishe[s]" it, rather than "merely fail[s] to preserve" it. Toth , ¶ 45, 353 P.3d at 710 (quoting United States v. Cornelius , 696 F.3d 1307, 1319 (10th Cir. 2012) ).
[¶10] A defendant who waives his right to specific jury instructions or a verdict form will be denied review under the invited error doctrine. See Nunamaker v. State , 2017 WY 100, ¶¶ 8, 10, 401 P.3d 863, 866 (Wyo. 2017) (no review where waiver of jury instruction, but review under plain error for forfeiture of jury instruction); Vaught v. State , 2016 WY 7, ¶ 34, 366 P.3d 512, 520 (Wyo. 2016) (no review where waiver of jury instruction, but review under plain error for forfeiture of jury instruction); Bromley v. State , 2007 WY 20, ¶ 35, 150 P.3d 1202, 1213 (Wyo. 2007) (no review where waiver of jury instruction); United States v. Jereb , 882 F.3d 1325, 1341 (10th Cir. 2018) (no review where waiver of jury instruction); Cornelius , 696 F.3d at 1319 (no review where waiver of jury instruction). We have in the past reviewed invited errors under limited circumstances where the issue is "necessarily prejudicial." Toth , ¶ 45, 353 P.3d at 710 (quoting Snow v. State , 2009 WY 117, ¶ 26, 216 P.3d 505, 513 (Wyo. 2009) ); see also Mickelson v. State , 2008 WY 29, ¶¶ 10, 13, 178 P.3d 1080, 1083-84 (Wyo. 2008). In Toth , however, we held a waiver that rises to the level of invited error will not be reviewed on appeal, regardless of whether the jury instructions were necessarily prejudicial. "[Mr. Toth] waived his right to appellate review. Under such circumstances, the alleged error is not reviewable and we do not reach the question of whether Mr. Toth was necessarily prejudiced." Toth , ¶ 47, 353 P.3d at 711. In Nunamaker , we explicitly clarified that we will not review a waived error:
In Vaught , we suggested that "[t]here is an exception [to the doctrine of invited error] for an error which is 'necessarily prejudicial.' " [ Vaught , 366 P.3d at 520 n.11 ] (quoting Toth , ¶ 47, 353 P.3d at 711 (quoting Snow v. State , 2009 WY 117, ¶ 26, 216 P.3d 505, 513-14 (Wyo. 2009) )). That statement is at odds with our decision in Toth, where we held that invited error that rises to the level of waiver is not reviewable on appeal. If the error has been waived, we do not address prejudice. Toth , ¶ 47, 353 P.3d at 711 (Mr. Toth "waived his right to appellate review. Under such circumstances, the alleged error is not reviewable and we do not reach the question of whether Mr. Toth was necessarily prejudiced."). Prejudice remains a part of the plain error analysis where the invited error was "forfeited" rather than "waived."
Nunamaker , ¶ 11, 401 P.3d at 867 n.3 (emphasis added).
[¶11] Here, defense counsel's objections raised the same complaint Mr. Jackson now urges on appeal. At the jury instruction conference, the parties and the district court discussed the jury instructions and the verdict form together. The Description Issue was a single problem appearing in both documents and could have been resolved with changes to the jury instructions, the verdict form, or both. The State offered to add language to the jury instructions to clarify the location of each offense. Defense counsel balked, claiming it was the verdict form that should contain more specificity. The district court directed the parties to offer a solution that would resolve the Description Issue. Defense *988 counsel returned with jury instructions that did not solve the Description Issue and did not offer any amendments to the verdict form. The record demonstrates Mr. Jackson knew the basis for his current claims and offered revisions that were accepted and knowingly allowed matters to proceed. In other words, Mr. Jackson affirmatively waived the Description Issue. Under the invited error doctrine, "[w]e reject attempts by a defendant to turn a trial strategy into an appellate error." Toth , ¶ 45, 353 P.3d at 710 (quoting Ortiz v. State , 2014 WY 60, ¶ 81, 326 P.3d 883, 899 (Wyo. 2014) ). Mr. Jackson created the very situation he now asks us to review-he invited the error. We decline to address the Description Issue waived below.
II. Was the evidence sufficient to convict Mr. Jackson of first-degree sexual abuse beyond a reasonable doubt on Count I?
[¶12] In Mr. Jackson's second argument, he argues that the district court erred when it denied his motion for judgment of acquittal on Count I due to insufficient evidence. When reviewing a motion for judgment of acquittal, "we examine and accept as true the evidence of the prosecution together with all logical and reasonable inferences to be drawn therefrom." Foltz v. State , 2017 WY 155, ¶ 10, 407 P.3d 398, 401 (Wyo. 2017) (quoting Bruce v. State , 2015 WY 46, ¶ 52, 346 P.3d 909, 926 (Wyo. 2015) ). "As a practical matter, the standard of review for denial of a motion for judgment of acquittal is the same as that used when an appeal claims insufficient evidence to convict." Foltz , ¶ 10, 407 P.3d at 401.
[¶13] Although Mr. Jackson challenges the denial of his motion for judgment of acquittal, he is arguing the evidence was insufficient to sustain his conviction. See Foltz , ¶ 10, 407 P.3d at 401. Our task is to determine "whether or not the evidence could reasonably support such a finding by the factfinder." Id . (quoting Hill v. State , 2016 WY 27, ¶ 13, 371 P.3d 553, 558 (Wyo. 2016) ). In doing so, we defer to the jury "and assume they believed only the evidence adverse to the defendant since they found the defendant guilty beyond a reasonable doubt." Foltz , ¶ 10, 407 P.3d at 401-02 (quoting Oldman v. State, 2015 WY 121, ¶ 5, 359 P.3d 964, 966 (Wyo. 2015) ).
[¶14] To convict Mr. Jackson beyond a reasonable doubt, the jury needed to find that Mr. Jackson inflicted "sexual intrusion" on A.D. by sexual intercourse, pursuant to Wyo. Stat. Ann. § 6-2-314. The jury also needed to find that A.D. was "under the age of thirteen" and that Mr. Jackson was sixteen years or older at the time of the sexual intrusion.
[¶15] Mr. Jackson submits that the State presented insufficient evidence to establish that Mr. Jackson penetrated A.D., insufficient evidence to show that Mr. Jackson did so "for the purposes of sexual arousal, gratification or abuse," and insufficient evidence that Mr. Jackson was at least sixteen years old at the time of the incident. We reject each of these arguments in turn.
[¶16] First, A.D. testified repeatedly that "[Mr. Jackson] put his privates to mine" on the bed in the motel room. She also drew a picture of Mr. Jackson's privates for the jury at trial. The SANE nurse testified that A.D. told her that Mr. Jackson laid her down, spread her legs apart, and that "his private parts touched my private parts here, in, out, this." In Pryor , we have repeatedly stated:
that sexual intercourse is accomplished in a legal sense if there is the slightest penetration of the genital organs of the female by the sexual organ of the male. To sustain a conviction for unlawful sexual intrusion, it is not necessary that the vaginal cavity be fully entered. Rather, it is sufficient if there is entry of the male organ into the labia or vulva.
Pryor v. State , 2009 WY 95, ¶ 9, 212 P.3d 635, 637 (Wyo. 2009) (internal citations omitted). The State needed to prove only that there was the slightest penetration of A.D.'s genital organs to establish sexual intrusion by sexual intercourse. Id . Taking the evidence in the light most favorable to the State, we find that a reasonable jury could have been convinced beyond a reasonable doubt that sexual intrusion by sexual intercourse occurred during the charged dates.
*989 [¶17] Next, Mr. Jackson argues that there was no evidence that he performed the alleged sexual intrusion by sexual intercourse for purposes of "sexual gratification." The meaning of sexual intrusion is:
(A) Any intrusion, however slight, by any object or any part of a person's body, except the mouth, tongue or penis, into the genital or anal opening of another person's body if that sexual intrusion can reasonably be construed as being for the purposes of sexual arousal, gratification or abuse; or
(B) Sexual intercourse, cunnilingus, fellatio, analingus or anal intercourse with or without emission.
Wyo. Stat. Ann. § 6-2-301(vii) (LexisNexis 2017) (emphasis added). Proof of intrusion "for the purposes of sexual arousal or gratification" is not required under subsection B. Mr. Jackson's contention that the evidence was insufficient to prove purpose is without merit.
[¶18] Finally, Mr. Jackson briefly contends that the State failed to prove that he was sixteen years or older at the time of the alleged sexual abuse. However, A.D.'s mother testified that at the time of trial, Mr. Jackson was twenty-nine years old. The jury could and clearly did rely on this testimony. We conclude that the State presented sufficient evidence for the jury to conclude that sexual intrusion by sexual intercourse occurred as charged in Count I.
III. Was Mr. Jackson denied a fair trial because of ineffective assistance of counsel?
[¶19] Mr. Jackson contends trial counsel was ineffective and acted "outside the wide range of professionally competent assistance." Strickland v. Washington , 466 U.S. 668, 690, 104 S. Ct. 2052, 2066, 80 L. Ed 2d 674 (1984). He argues the failure to cross-examine A.D. and to call Mr. Jackson to testify in his own defense constitute ineffective assistance. We reject both arguments.
A. Standard of Review
[¶20] Mr. Jackson's claim of ineffective assistance of counsel "involve[s] mixed questions of law and fact" and is "review[ed] de novo." Bruckner v. State , 2018 WY 51, ¶ 12, 417 P.3d 178, 181 (Wyo. 2018). "When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance." Barkell v. State , 2002 WY 153, ¶ 9, 55 P.3d 1239, 1242 (Wyo. 2002) (citations omitted). In evaluating the effectiveness of counsel, we begin with "a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id . ; see also Herdt v. State , 891 P.2d 793, 796 (Wyo. 1995).
[¶21] This Court has adopted the familiar standard set forth in Strickland v. Washington for determining whether a criminal defendant has received effective assistance of counsel:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Bruckner , ¶ 14, 417 P.3d at 181 (quoting Strickland , 466 U.S. at 687, 104 S. Ct. at 2064 ).
B. Cross-Examination
[¶22] Mr. Jackson filed a motion for a new trial under W.R.A.P. Rule 21. At the W.R.A.P. Rule 21 hearing, Mr. Jackson's counsel[2] testified her failure to review all the *990 supporting evidence regarding A.D. adversely affected her decision to forego cross-examination.
[¶23] This Court does not evaluate counsel's efforts with the benefit of hindsight, but "attempt[s] to reconstruct the circumstances which existed during the trial counsel's challenged conduct and evaluate the performance from his perspective." Barkell , ¶ 20, 55 P.3d at 1244. Ultimately, co-counsel made the strategic decision not to cross-examine A.D. based on her belief it would serve no fundamental advantage. ("I thought that was a good strategy, and I also agreed to release the child from the subpoena.") In fact, she believed cross-examination was potentially detrimental to the defense. This rationale demonstrates that trial counsel thoroughly considered a cross-examination of the victim and ultimately decided not to conduct it. We find that trial counsel's decision not to cross-examine A.D. was part of the defense's "sound trial strategy," which we will not second-guess. See Dickeson v. State , 843 P.2d 606, 609 (Wyo. 1992).
[¶24] Further, Mr. Jackson presents no evidence that failure to cross-examine A.D. prejudiced him or would have changed the outcome of the case. See Proffit v. State , 2008 WY 114, ¶ 33, 193 P.3d 228, 241 (Wyo. 2008). "Speculation as to how the cross-examination could have been conducted differently does not meet the Strickland test for ineffective assistance." Barkell , ¶ 23, 55 P.3d at 1244.
C. Failure to Testify
[¶25] Mr. Jackson also argues that counsel's failure to call him to testify amounts to ineffective assistance. A defendant's decision whether or not to testify is a constitutionally-protected right. Herdt , 891 P.2d at 797. Both the trial court and the defendant's attorney should ensure that the defendant has been apprised of his right to take the stand and the effects that may stem from his knowing and voluntary decision to remain silent. Mebane v. State, 2012 WY 43, ¶ 16, 272 P.3d 327, 329 (Wyo. 2012).
[¶26] The district court advised Mr. Jackson of his right to testify throughout the course of these proceedings-including at his initial appearance, at his arraignment, and during trial. Mr. Jackson's responses reflect that he understood and knowingly waived his right to testify in his own defense. Trial counsel repeatedly discussed with Mr. Jackson his right to testify.[3] Further, the district court questioned Mr. Jackson a final time at the close of the jury instruction conference:
THE COURT: Mr. Jackson?
THE DEFENDANT: Yes, sir.
THE COURT: You've heard what's been said. They -- and you had right to testify, put on a defense, and they stood up on your behalf and said you didn't want to; is that correct?
THE DEFENDANT: That is correct, sir.
THE COURT: And you knew you could have?
THE DEFENDANT: Yes, sir.
THE COURT: If you had testified, you would be treated as any other witness.
THE DEFENDANT: Of course.
THE COURT: And his confidence in that regard, even though those answers were brief, convince the Court that there is enough of a record as to a knowing and voluntary waiver.
Later, at the W.R.A.P. Rule 21 hearing, Mr. Jackson reiterated that it was his choice not to testify at trial.
[¶27] The record indicates that Mr. Jackson understood the consequences of waiving the right to testify. He "voluntarily, knowingly and intelligently waived that right after consideration of a number of factors and discussion with counsel and the district court." Barker v. State , 2006 WY 104, ¶ 28, 141 P.3d 106, 116 (Wyo. 2006) (citing *991 Burgos-Seberos v. State , 969 P.2d 1131, 1135 (Wyo. 1998) ). We defer to Mr. Jackson's decision not to testify. See Herdt , 891 P.2d at 796.
[¶28] Even if trial counsel was deficient in advising Mr. Jackson not to testify, the second prong of the Strickland test requires a showing of prejudice. Dickeson , 843 P.2d at 609 (quoting Strickland , 466 U.S. at 687, 104 S. Ct. at 2064 ). Mr. Jackson's sole argument is that "[t]he right to testify is such a basic tenet of due process that ignoring that right can only result in an unfair trial" and that "[t]o ignore or exclude that testimony is prejudice." "[A] claim of prejudice must be supported by more than bald assertions or speculation." Castellanos v. State , 2016 WY 11, ¶ 99, 366 P.3d 1279, 1305 (Wyo. 2016). Mr. Jackson has failed to prove, with reference to the record, how he suffered prejudice from not testifying. Trial counsel was not ineffective when it did not call Mr. Jackson as a witness.
CONCLUSION
[¶29] Mr. Jackson waived his right to review of the jury instructions and verdict form under the invited error doctrine. The evidence was sufficient to convict Mr. Jackson of Count I. Finally, Mr. Jackson's trial counsel was not ineffective for the decision not to cross-examine A.D. and in not calling Mr. Jackson as a witness. Affirmed.

The written proposals are not in the record, but the record is clear on the events that followed.

Mr. Jackson's defense team consisted of two attorneys-lead counsel and co-counsel. Co-counsel became involved later in the case, when she was approached to perform the cross-examination of A.D. Co-counsel's role expanded beyond the cross-examination of A.D., and she went on to prepare an opening statement and perform other cross-examinations at trial. She then represented Mr. Jackson at sentencing.

Both lead counsel and co-counsel discussed this issue with Mr. Jackson.