# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 33

### OCTOBER TERM, A.D. 2020

### February 22, 2021

ADAM CHRISTOPHER MACKLEY,

Appellant
(Defendant),

v.

S-20-0124

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Uinta County*
*The Honorable Joseph B. Bluemel, Judge*

*Representing Appellant:*

> *Dion J. Custis, Dion J. Custis, P.C., Cheyenne, Wyoming. Argument by Mr. Custis.*

*Representing Appellee:*

> *Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Kristen Jones, Assistant Attorney General. Argument by Ms. Jones.*

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]   Rocky, a boxer, escaped his owner's grasp and attacked Mr. Mackley's dogs at his front door.  A local teenager grabbed Rocky and dragged him into the street as the dog fight continued.  Mr. Mackley got his gun and shot Rocky as he was held by the teenager.  A jury convicted Mr. Mackley of aggravated animal cruelty and reckless endangering.  He contends the jury was improperly instructed on the law of animal cruelty, and the evidence was insufficient to convict him of reckless endangering.  We affirm.

## *ISSUES*

[¶2]   The parties raise these issues:

> I.    Whether Mr. Mackley waived his claim that jury instruction No. 15 misled the jury.
>
> II.   Whether the district court properly instructed the jury on the law related to animal cruelty.
>
> III.  Whether the evidence was sufficient to convict Mr. Mackley of reckless endangering.

## *FACTS*

[¶3]   Gabriel and Danielle Mendez were walking their boxers, Rocky and Lola, when Rocky escaped Mr. Mendez's grasp and ran to Adam Mackley's front door, where Mr. Mackley's son was returning from walking the Mackleys' three dogs.  As he lost hold of Rocky's leash, Mr. Mendez shouted for help from a group of kids playing basketball nearby.  Some of the kids gave chase, including high school sophomore, P.V.

[¶4]   Two of the Mackleys' dogs began to fight with Rocky on the Mackleys' porch.  P.V. reached the top of the Mackleys' stairs, grabbed Rocky by his harness, and pulled Rocky down the stairs and into the street, while all three dogs continued to fight.  P.V. heard Mr. Mackley's wife yell "shoot the dog" and saw Mr. Mackley appear and then disappear back into the house.

[¶5]   In the street, P.V. continued to try to stop the ongoing dog fight, and was holding Rocky's front end up by his harness with both hands, with Rocky's hind end between his legs.  While P.V. and Rocky were in that position, Mr. Mackley came back out of the house, into the street, and shot Rocky in the neck.  P.V. did not realize Mr. Mackley had a gun until he felt Rocky go limp in his arms.

1

[¶6]     The State charged Mr. Mackley with aggravated cruelty to animals under Wyo. Stat. Ann. § 6-3-203(c)(vii) & (n) (LexisNexis 2017), a felony, and reckless endangering under Wyo. Stat. Ann. § 6-2-504(a), a misdemeanor.  The district court agreed to give instruction No. 15, offered by the State and Mr. Mackley as a theory of defense instruction on the animal cruelty charge.

[¶7]     The State and Mr. Mackley each submitted elements instructions on the aggravated cruelty to animals charge.  The district court declined to give Mr. Mackley's version, which contained excerpts of the animal cruelty statute, including subsection (m)(i).  Subsection (m) creates an exception to the animal cruelty statute when a person humanely destroys an animal or livestock.  Wyo. Stat. Ann. § 6-3-203(m)(i).

[¶8]     At the close of the State's evidence, and again after the close of all evidence, Mr. Mackley moved for judgment of acquittal on both charges.  He argued that the Wyoming Legislature made it clear that it is not cruelty to animals "where an animal is humanely destroyed, . . . where that animal isn't shot multiple times or shot in a manner to cause it undue pain or anguish or any substantial, significant, lingering issue, pain or injury."  As for reckless endangering, he argued the State did not provide evidence that he intentionally pointed a firearm at anyone, which he contended the statute required.  The court denied the motions on Count I and reserved ruling on Count II.  The jury found Mr. Mackley guilty on both counts.  Mr. Mackley appeals, and we affirm.

### DISCUSSION

[¶9]     Mr. Mackley claims the district court erred when it gave instruction No. 15 because it was confusing and erred when it denied his proposed elements instruction.  He also claims the evidence was insufficient to convict him of reckless endangering.

### I.     *Mr. Mackley waived his argument that jury instruction No. 15 was confusing or misleading*

[¶10]  The parties jointly submitted instruction No. 15, which the State characterized as a "theory of defense."[1]  At two points during the instruction conference, Mr. Mackley's attorney told the court he agreed with the instruction.

---

[1] The instruction read:

> If you find that Gabriel and Danielle Mendez'[s] dog was shot by Defendant Adam C. Mackley beyond a reasonable doubt then you must further find, beyond a reasonable doubt, that conduct occurred "while the animal was on property where the animal was authorized to be present."

2

[¶11] On appeal, Mr. Mackley argues the instruction was confusing and misleading because it left doubt whether the jury understood under what circumstances Mr. Mackley could be found guilty. The State argues Mr. Mackley waived this argument because he "requested" instruction No. 15. "We reject attempts by a defendant to turn a trial strategy into an appellate error." *Toth v. State*, 2015 WY 86A, ¶ 45, 353 P.3d 696, 710 (Wyo. 2015) (quoting *Ortiz v. State*, 2014 WY 60, ¶ 81, 326 P.3d 883, 899 (Wyo. 2014)). "The doctrine of invited error prohibits a party from raising on appeal alleged trial court errors that were induced by that party's actions." *Jackson v. State*, 2019 WY 81, ¶ 9, 445 P.3d 983, 986 (Wyo. 2019) (quoting *Toth*, 2015 WY 86A, ¶ 45, 353 P.3d at 710). When a party affirmatively waives a right or objection, we do not review it; however, when a party merely forfeits a right or objection, we review for plain error. *Jackson*, 2019 WY 81, ¶ 9, 445 P.3d at 987. Waiver is the "intentional relinquishment or abandonment of a known right." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993)). Forfeiture is the failure to make a timely assertion of a right. *Jackson*, 2019 WY 81, ¶ 9, 445 P.3d at 987 (citing *Olano*, 507 U.S. at 733, 113 S.Ct. at 1777).

[¶12] There is a "fine line between positive acts and omissions." *Vaught v. State*, 2016 WY 7, ¶ 35, 366 P.3d 512, 520 (Wyo. 2016). We regard simple agreement as an omission or forfeiture, not a waiver. In *Vaught*, the jury asked for clarification on several instructions, and the State advised the district court to tell the jury to read the packet they had been given. *Id.* at ¶ 11, 366 P.3d at 515. Defense counsel said, "I agree, Your Honor. Read the instructions and then instructions have been provided and whatever standard language the court uses for this kind of inquiry." *Id.* We reviewed for plain error because his "endorsement took the form of a simple agreement with the prosecutor's view. It was not an act of such independent intent that we can view it as a complete waiver of the error now alleged on appeal." *Id.* at ¶ 35, 366 P.3d at 520; *see also Mraz v. State*, 2016 WY 85, ¶¶ 62-65, 378 P.3d 280, 294-95 (Wyo. 2016) (defendant did not waive her claim the jury should have been given a supplemental instruction on the definition of "forgery" when she agreed with the prosecution that the jury should be referred to the instructions already given).

---

No owner is permitted to allow any animal to run at large within the City of Evanston and an animal is considered to be "at large" when it is off the property of the owner and not under immediate control by a competent person.

You are instructed that Defendant Adam C. Mackley asserts that Gabriel and Danielle Mendez'[s] dog was not "on property where the animal was authorized to be present" and if the State fails to prove beyond a reasonable doubt that the dog was not "at large" then you should find Defendant Adam C. Mackley not guilty of Aggravated Cruelty to Animals.

[¶13]  Waiver requires something more affirmative than simple agreement; it requires an "intentional relinquishment or abandonment of a known right." *Jackson*, 2019 WY 81, ¶ 9, 445 P.3d at 987.  In *Jackson*, the defendant argued that because the verdict form and jury instructions did not adequately describe separate instances of charged conduct, it was not possible to determine the specific conduct that formed the basis for his conviction. *Id.* at ¶ 8, 445 P.3d at 986.  However, the defendant knew there was a description issue during trial because the defense and prosecution could not agree whether to specify which conduct went with which charge in the verdict form, instructions, or both.  *Id.* at ¶ 11, 445 P.3d at 987-88.  Despite the court's invitation, the defendant then offered instructions that did nothing to differentiate between the instances and left the verdict form unchanged.  *Id.*  We determined Mr. Jackson waived his claim of reversible error because he offered the instructions the district court ultimately gave, and did not correct them when given the opportunity, thus inviting the error he complained of.  *Id.*

[¶14]  In *Toth v. State*, the defendant repeatedly declined the district court's offer to include an instruction on specific intent, despite his theory that he was too intoxicated to form the specific intent required for felony theft.  2015 WY 86A, ¶¶ 11-12, 353 P.3d at 702.  Later, when the jury asked, "Do we only consider the original purpose of the taking of the equipment or do we consider the entire event[?]" Mr. Toth advised the court to "refer them to the elements instruction as previously given."  *Id.* at ¶ 13, 353 P.3d at 702. We found Mr. Toth waived his argument that the district court should have given an instruction on specific intent.  *Id.* at ¶ 47, 353 P.3d at 711.

[¶15]  This case is most similar to *Toth*.  At the jury instruction conference, the court inquired whether the parties had agreed to any instructions.  The State indicated they had:

> [Defense counsel] will certainly correct me but my understanding is the only real stipulation that I believe the parties have for the jury instructions is that he agreed that my theory of defense instruction that I crafted to eliminate some of his other proposed instructions would be appropriate; and so I believe that we have stipulated to that instruction.  That was my understanding.

Mr. Mackley's attorney said, "Your Honor, she's correct that we reached an agreement with regard to the instruction that she drafted, which she phrases as a theory of the defense instruction.  Based on that, I informed her we are withdrawing our Instructions No. 1 and 2."  The discussion then turned back to Mr. Mackley's self-defense theory, and the court took a recess so the parties could confer.  When it resumed, they went through numerous pattern instructions before turning back to those the parties had submitted.  The court asked Mr. Mackley's attorney, in reference to instruction No. 15, "And this is the

4

instruction you would like me to give. . . . Is that correct, [defense counsel]?" Mr. Mackley's counsel replied, "Yes, it is."

[¶16] The record shows Mr. Mackley did more than "merely agree" to the instruction, he negotiated with the State to draft it, and twice affirmatively endorsed it. Mr. Mackley abandoned a known right because he offered the instruction jointly with the State and declined the opportunity to object or correct any potential confusion it could cause.

## II.     *The district court correctly denied Mr. Mackley's elements instruction*

[¶17] The standard of review for a district court's action on jury instructions is abuse of discretion. *Farrow v. State*, 2019 WY 30, ¶ 12, 437 P.3d 809, 815 (Wyo. 2019) (citing *Merit Energy Co., LLC v. Horr*, 2016 WY 3, ¶ 23, 366 P.3d 489, 497 (Wyo. 2016)). "The district court 'has extensive discretion in tailoring jury instructions, so long as they correctly state the law and fairly and adequately cover the issues presented.'" *Farrow*, 2019 WY 30, ¶ 12, 437 P.3d at 815 (quoting *Merit Energy Co.*, 2016 WY 3, ¶ 23, 366 P.3d at 497). Mr. Mackley's challenge to the elements instruction rests on statutory interpretation, which we review de novo. *Bird v. Lampert*, 2021 WY 11, ¶ 7, 479 P.3d 382, 384 (Wyo. 2020).

[¶18] Mr. Mackley and the State proposed different elements instructions on the animal cruelty charge, and the district court gave the State's version, which read:

> The elements of the crime of Aggravated Cruelty to Animals as charged in the Information are:
>
> 1.     On or about the 25th day of May, 2019;
> 2.     In Uinta County, Wyoming;
> 3.     The Defendant, Adam C. Mackley;
> 4.     Shot
> 5.     Any domesticated animal owned by another person;
> 6.     While the animal was on property where the animal was authorized to be present.
>
> If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.
>
> If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

5

Mr. Mackley argues the district court erred by refusing his elements instruction, which included this portion of the Wyoming statute:

> (m) Nothing in subsection (a), . . . (c)(vii) or (n) of this section shall be construed to prohibit:
>
> > (i) A person from humanely destroying an animal, including livestock;

[¶19] Mr. Mackley's counsel urged the district court to give his instruction because "that's the statute; and the statute is clear." The State responded that subsection (m) would be confusing, and not a clear statement of the law if it were included in the elements instruction. The district court agreed and rejected Mr. Mackley's instruction. Mr. Mackley's counsel objected, but did not ask the court to offer subsection (m) as a separate instruction.

[¶20] Mr. Mackley also contends, for the first time on appeal, that subsection (m) should have been given as a theory of defense. Normally, we review a court's refusal to give a theory of defense instruction de novo, however when the instruction was not offered by a defendant, or, in this case, was not offered as a theory of defense, the standard of review is plain error. *Hopkins v. State*, 2019 WY 77, ¶ 18, 445 P.3d 582, 588 (Wyo. 2019). The instruction must present a proper theory of defense that is recognized by statute or case law in the jurisdiction. *Garza v. State*, 2020 WY 32, ¶ 18, 458 P.3d 1239, 1243 (Wyo. 2020) (citing *Bouwkamp v. State*, 833 P.2d 486, 490 (Wyo. 1992)). Both of Mr. Mackley's contentions raise an issue of statutory construction, which we review de novo. *Bird*, 2021 WY 11, ¶ 7, 479 P.3d at 384. Because Mr. Mackley's argument that the killing was humane, and therefore excluded from the crime of aggravated cruelty to animals, is not supported by the language of the statute, we conclude the district court did not err by refusing to give his instruction.

[¶21] Our goal when interpreting a statute is to give effect to the intent of the legislature and to attempt to determine that intent primarily through the plain and ordinary meaning of the words used in the statute. *Bird*, 2021 WY 11, ¶ 8, 479 P.3d at 384 (citing *Matter of Adoption of MAJB*, 2020 WY 157, ¶ 15, 478 P.3d 196, 201 (Wyo. 2020)).

> Where there is plain, unambiguous language used in a statute there is no room for construction, and a court may not look for and impose another meaning. Where legislative intent is discernible a court should give effect to the most likely, most reasonable, interpretation of the statute, given its design and purpose.

*Hopkins*, 2019 WY 77, ¶ 7, 445 P.3d at 585 (quoting *Adekale v. State*, 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015) (citations and quotation marks omitted)).

[¶22] The statute's plain language sets forth the elements of aggravated animal cruelty: the defendant (1) shoots, (2) a domesticated animal owned by another person, (3) while the animal is on property where it is authorized to be present. Wyo. Stat. Ann. § 6-3-203(c)(vii). Subsection (m) is an exception to (c)(vii) when someone "humanely destroy[s]" a domesticated animal or livestock, even when the animal is owned by another person and on property where it was authorized to be. If, as Mr. Mackley contends, inhumane killing is an element of the crime, then any animal could be killed, under any circumstances, as long as it is killed quickly. "[W]e strive to avoid an interpretation that produces an absurd result, or that renders a portion of the statute meaningless." *HB Fam. Ltd. P'ship v. Teton Cnty. Bd. of Cnty. Comm'rs*, 2020 WY 98, ¶ 56, 468 P.3d 1081, 1096 (Wyo. 2020) (quoting *Seherr-Thoss v. Teton Cnty. Bd. of Cnty. Comm'rs*, 2014 WY 82, ¶ 19, 329 P.3d 936, 945 (Wyo. 2014) (citations omitted)).

[¶23] "Humane" means "marked by compassion, sympathy, or consideration for other human beings or animals." *Humane*, Webster's Third New International Dictionary (2002). Mr. Mackley argues subsection (m) means if Rocky died quickly and without excess pain, Mr. Mackley acted humanely. He misreads the statute. "Humanely" describes an act driven by compassion for animals who are suffering and distressed, not the swift execution of any livestock or domesticated animal owned by another person, for any reason. Mr. Mackley presented no evidence that he "humanely destroyed" Rocky. Rocky was not suffering or distressed and did not need to be euthanized. The fact that Rocky died immediately, from one shot, without cuts, bruises, or abrasions did not make his dispatch humane. Because the evidence did not support Mr. Mackley's position that he humanely killed Rocky, under the plain meaning of the statute, the district court committed no error when it declined to instruct the jury on subsection (m).

### III. *The evidence was sufficient for the jury to convict Mr. Mackley of reckless endangering*

[¶24] Mr. Mackley argues there was insufficient evidence to convict him of reckless endangering, and his motion for judgment of acquittal should have been granted. The standard of review for sufficiency of the evidence and denial of a motion for judgment of acquittal is the same. *Armajo v. State*, 2020 WY 153, ¶ 20, 478 P.3d 184, 191 (Wyo. 2020) (citing *Foltz v. State*, 2017 WY 155, ¶ 10, 407 P.3d 398, 401 (Wyo. 2017)). We must determine "whether the evidence could reasonably support the jury's verdict." *Armajo*, 2020 WY 153, ¶ 21, 478 P.3d at 191 (quoting *Huckins v. State*, 2020 WY 21, ¶ 10, 457 P.3d 1277, 1279 (Wyo. 2020)). We do not reweigh the evidence or reexamine the credibility of witnesses, but examine the evidence in the light most favorable to the State. *Armajo*, 2020 WY 153, ¶ 21, 478 P.3d at 191. We accept the State's evidence as true, giving it every favorable inference which can reasonably and fairly be drawn from

it. *Id.* "We disregard any evidence favorable to the appellant that conflicts with the State's evidence." *Id.* (quotation marks and citation omitted).

[¶25] The jury found Mr. Mackley guilty of reckless endangering under Wyo. Stat. Ann. § 6-2-504(a) (LexisNexis 2017) which states:

> (a)　A person is guilty of reckless endangering if he recklessly engages in conduct which places another person in danger of death or serious bodily injury.

Mr. Mackley argues the State did not prove he engaged in conduct which placed P.V. in danger because he did not point the gun at P.V., and because he acted cautiously and was not "wildly shooting" his gun. Pointing a gun at someone is conduct that may be charged under reckless endangering, but it is not the only way to commit the crime. In his motion for judgment of acquittal, Mr. Mackley argued *Sindelar v. State*, 932 P.2d 730, 733 (Wyo. 1997), stood for the proposition that the statute required "at least" pointing a gun at someone. Mr. Sindelar was charged with aggravated assault and battery for pointing a pistol at the victim's son and ordering him to "get his sister back in the truck" or he would kill his mother. 932 P.2d at 731. He asked for a jury instruction on reckless endangering as a lesser included offense. *Id.* at 731-32. This Court held reckless endangering was not a lesser included offense of aggravated assault and battery and explained that subsection (b) of Wyo. Stat. Ann. § 6-2-504 codifies the Model Penal Code rule that when a defendant points a gun at someone, he is presumed to have committed reckless endangering. *Sindelar*, 932 P.2d at 733. Subsection (b) provides:

> (b)　Any person who knowingly points a firearm at or in the direction of another, whether or not the person believes the firearm is loaded, is guilty of reckless endangering unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another or as provided for under W.S. 6-2-602.

Wyo. Stat. Ann. § 6-2-504 (LexisNexis 2017). Subsection (b) therefore identifies specific conduct that is a subset of the more general category of reckless endangering. Mr. Mackley did not point a gun at P.V., therefore he was charged under subsection (a), which only required that he recklessly engaged in conduct which placed P.V. in danger of death or serious bodily injury.

[¶26] Mr. Mackley also argues that he did not act recklessly because he did not "wildly" shoot at the dog, but "was cautious" and "put the gun right next to Rocky's neck to avoid any risk of harm to PV." The jury was instructed:

> A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that the harm he is accused of causing will occur, and the harm results. The risk shall be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

Mr. Mackley did not need to "wildly" shoot at Rocky to be guilty of reckless endangering. He did not need to cause actual physical harm or serious bodily injury to P.V. or anyone else. *Orona-Rangal v. State*, 2002 WY 134, ¶ 18, 53 P.3d 1080, 1086 (Wyo. 2002). "[T]he term 'harm' in the definition of 'recklessly' refers to engaging 'in conduct which places another person in danger of death or serious bodily injury.' It logically follows that the harm which must result is actually placing another person in danger of death or serious bodily injury." *Id.* The State presented evidence that P.V. was holding Rocky while Mr. Mackley shot him, and that Mr. Mackley gave no warning before he fired. Based on that evidence, the jury could conclude that Mr. Mackley consciously disregarded a substantial risk that his conduct placed P.V. in danger of death or serious bodily injury, and that his conduct was a gross deviation from the standard of conduct a reasonable person would observe in that situation. Therefore, the evidence was sufficient to find him guilty of reckless endangering.

## *CONCLUSION*

[¶27] Mr. Mackley waived his argument that jury instruction No. 15 on the crime of aggravated animal cruelty was confusing or misleading. The district court did not err by denying Mr. Mackley's proposed elements instruction. The evidence was sufficient to sustain the conviction of reckless endangering. Affirmed.