# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 39

OCTOBER TERM, A.D. 2024

April 3, 2025

IN THE MATTER OF THE TERMINATION
OF PARENTAL RIGHTS TO: SLD, a minor
child.

KATRINA DANFORTH,

Appellant
(Respondent),

v.                                                              S-24-0206

RYAN HANSEN,

Appellee
(Petitioner).

*Appeal from the District Court of Sheridan County*
*The Honorable Darci A.V. Phillips, Judge*

*Representing Appellant:*
Katrina Danforth, pro se.

*Representing Appellee:*
Stacy Michelle Kirven, Kirven Law, LLC, Cheyenne, Wyoming.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, JAROSH, JJ. and SNYDER, DJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BOOMGAARDEN, Justice.**

[¶1]   This is Katrina Danforth's second appeal to this court.  In *Matter of SLD*, 2024 WY 50, 547 P.3d 974 (Wyo. 2024) (*SLD I*) we dismissed Ms. Danforth's appeal for lack of jurisdiction because the district court's April 21, 2023, order terminating her parental rights to SLD did not address her outstanding counterclaim to terminate Mr. Hansen's parental rights to SLD.  *Id.*  2024 WY 50, ¶ 1, 547 P.3d at 975.  Then, on June 13, 2024, without taking additional evidence, the district court entered an "Order Dismissing Respondent's Counterclaim."  In this pro se appeal of that final order, Ms. Danforth argues that the Department of Family Services conducted an inadequate social study and the district court erroneously denied her request that the court appoint a guardian ad litem for SLD.  She also argues the district court violated her constitutional rights when it dismissed her counterclaim without an evidentiary hearing and unjustly extended her punishment for a past crime when it terminated her parental rights.  We affirm on all issues.

## *ISSUES*

[¶2]   We reframe Ms. Danforth's issues as:

1. Did the Department of Family Services' social study prejudice Ms. Danforth's case?

2. Did the district court err by denying Ms. Danforth's request for the appointment of a guardian ad litem for SLD?

3. Did the district court err in dismissing Ms. Danforth's counterclaim without a separate evidentiary hearing?

4. Did the district court erroneously extend Ms. Danforth's punishment for a past crime by terminating her parental rights?

## *FACTS*

[¶3]   We recounted the following background facts in *SLD I*:

> Ms. Danforth gave birth to SLD in January 2014, and later that year an Idaho court established Mr. Hansen's paternity.  The court awarded joint legal and physical custody of SLD to Ms. Danforth and Mr. Hansen, but Ms. Danforth was the "on-duty parent" subject to Mr. Hansen's visitation.  Upon learning that Ms. Danforth worked in the adult entertainment industry and had dated over the Internet from home while SLD was with her, Mr. Hansen filed for custody modification.  In January 2018, the Idaho court awarded temporary sole legal and physical custody to Mr. Hansen subject to Ms. Danforth's

1

visitation. Several months after this order was entered, Mr. Hansen discovered that Ms. Danforth had posted a video of SLD wearing only underwear and high heels to her "adult entertainment" Facebook page. After the Facebook post, Mr. Hansen filed an ex parte motion for modification of Ms. Danforth's visitation. The Idaho court suspended all visitation by Ms. Danforth.

Upset at this decision, Ms. Danforth hired a hitman to kill Mr. Hansen. Unknown to her, the hitman was an undercover police officer and did not execute the plan. Instead, Ms. Danforth was indicted in Idaho federal court for using interstate commerce in the commission of a murder-for-hire, in contravention of 18 U.S.C. § 1958. She pled guilty and in 2020, she was sentenced to 10 years in prison. Sometime after the indictment, Mr. Hansen and his wife relocated to Wyoming with SLD and their two other children.

*SLD I*, 2024 WY 50, ¶¶ 3-4, 547 P.3d at 975.

[¶4] Relevant to this appeal, on July 17, 2021, Mr. Hansen filed a petition to terminate Ms. Danforth's parental rights to SLD under Wyo. Stat. Ann. § 14-2-309(a)(iv). Ms. Danforth answered the petition and counterclaimed with a request that the district court terminate Mr. Hansen's parental rights on the grounds stated in Wyo. Stat. Ann. § 14-2-309(a)(iii), (a)(B) [sic], (c)(ii), (v), (a)(ix). She also asked the court to appoint a guardian ad litem for SLD, though she did not file a motion seeking that appointment.

[¶5] The district court ordered the Department of Family Services to complete a social study as required by Wyo. Stat. Ann. § 14-2-314. The Department conducted the study on December 19, 2021 and submitted its written report to the court on January 28. The district court held a one-day bench trial on March 3, 2023. At the beginning of the trial, the court noted that neither party had moved for the appointment of a guardian ad litem, and it ruled that one was not necessary, because Mr. Hansen adequately represented SLD's interests, which were not adverse to Mr. Hansen's. Ms. Danforth did not object to the court's ruling. The court entered its order terminating Ms. Danforth's parental rights on April 21, 2023.

[¶6] On June 13, 2024, following our dismissal of Ms. Danforth's initial appeal for lack of jurisdiction, the district court dismissed her counterclaim to terminate Mr. Hansen's parental rights to SLD without an evidentiary hearing. This appeal followed.

## DISCUSSION

### I. *The December 2021 Social Study did not prejudice Ms. Danforth.*

2

[¶7]    In conducting the required social study,[1] Ms. Janeal Fox Barney, with the Department of Family Services, visited the Hansen's home, and interviewed Mr. Hansen, his wife, SLD, and SLD's two siblings.  Ms. Barney left a message for Ms. Danforth's caseworker at the Federal Correctional Institution, but her call was unanswered and she did not interview Ms. Danforth.

[¶8]    The district court admitted the social study into evidence.  The study confirmed that Ms. Danforth had conspired to murder Mr. Hansen, and since her arrest in 2018, SLD had been living with Mr. Hansen.  It further reported that the Hansens had a clean home and were a "very close" family.  While the family had experienced "significant anxiety and fear" related to Ms. Danforth's murder-for-hire plot, they appeared to be in recovery.  Ms. Barney found the family in good health, and noted the children see a pediatrician regularly.  SLD exhibited some minor developmental delays and participated in a Title 1 reading group, but she was thriving in her father's home.  In short, Ms. Barney reported that nothing about SLD's current living situation concerned her, and to maintain SLD's mental and physical health, Ms. Barney recommended that SLD remain in her father's and stepmother's care.

[¶9]    Ms. Danforth objected to the social study below, expressing her concern that the social study was "one-sided" and would inadequately aid the court, and she moved for a new study.  She repeats this argument on appeal.[2] We note however, that although Ms. Barney did not interview her, Ms. Danforth testified at trial about her family's social history and her current situation.  Wyo. Stat. Ann. § 14-2-314.  Ms. Danforth listed her educational achievements while incarcerated: vocational training, bible classes, piano, and trauma courses.  Ms. Danforth also described what SLD was like as an infant and toddler, and explained how her flexible work schedule allowed for her to spend time with SLD.  She recounted how she co-parented with Mr. Hansen, in the early years when their relationship was civil, and then in later years when it wasn't.  Ms. Danforth implied that SLD was not well-cared for in the Hansen home, though that accusation was contradicted

---

[1] Wyo. Stat. Ann. § 14-2-314 states:

> Upon the filing of a petition by anyone other than an authorized agency as defined by W.S. 14–2–308(a)(ii)(A), the court shall direct that a social study be made by the appropriate county office of public assistance and social services or by any authorized agency to aid the court in making a final disposition of the petition.  The social study shall state the factual information pertaining to the allegations in the petition, the social history and the present situation and environment of the child and parent.  The social study shall not be excluded as evidence by reason of hearsay alone.  The social study shall be made available to any party to the action upon request.

[2] On appeal, she also argues the social study violated her rights to due process.  We decline to address this argument because it was neither raised nor argued below.  *In re Guardianship of Lankford*, 2013 WY 65, ¶ 28, 301 P.3d 1092, 1101 (Wyo. 2013) (citing *Davis v. City of Cheyenne,* 2004 WY 43, ¶ 26, 88 P.3d 481, 490 (Wyo.2004)) ("This court strongly adheres to a rule that it will not address issues that were not properly raised before the district court.").

by the social study. Finally, Ms. Danforth described the custody battle, and admitted that her efforts to have Mr. Hansen murdered harmed their co-parenting relationship.

[¶10] With the court having heard her testimony, Ms. Danforth does not identify what additional information was necessary to include in the social study to aid the district court in ruling on Mr. Hansen's termination petition. Wyo. Stat. Ann. § 14-2-314. Moreover, Ms. Danforth has not shown she was legally entitled to another study or that the trial's outcome would have been more favorable to her had the court granted her motion to conduct an additional study. Thus, Ms. Danforth failed to establish any prejudice resulting from the Department's social study. *See In re WDW*, 2010 WY 9, ¶¶ 15-16, 224 P.3d at 18 (finding no prejudicial error when one parent was not personally interviewed for the social study but testified at trial).

## II. The district court did not err when it found it unnecessary to appoint a guardian ad litem (GAL).

[¶11] Following receipt of a petition to terminate parental rights, the court must "appoint a guardian ad litem to represent the child *unless* the court finds the interests of the child will be represented adequately by the petitioner or another party to the action and are not adverse to that party." Wyo. Stat. Ann. § 14-2-312 (emphasis added). The court, therefore, has only two options: (1) appoint a guardian ad litem, or (2) make appropriate record findings that no guardian ad litem is required. *In re MN*, 2007 WY 189, ¶ 6, 171 P.3d 1077, 1080 (Wyo. 2007). Wyoming's Termination of Parental Rights Act requires strict compliance. Wyo. Stat. Ann. §§ 14-2-308 to -319; *Id.* (citing *MB v. Laramie County Dep't of Family Servs.*, 933 P.2d 1126, 1129 (Wyo. 1997)) (termination of parental rights is directed toward a right that is fundamental and substantial).

[¶12] In his petition, Mr. Hansen asserted a GAL was unnecessary because he adequately represented SLD's interests. Ms. Danforth responded that a GAL was necessary to protect SLD's best interests. However, she never filed a motion requesting the court to appoint a GAL or requested a hearing on the issue. Nor did Ms. Danforth raise this issue in her pre-trial memorandum. The district court nevertheless addressed the necessity of a GAL at the beginning of trial: "[F]or purposes of the record, I would note that I do find that a guardian ad litem is unnecessary because the child is in the care and custody of the petitioner and the petitioner is advocating for the child's best interest." Ms. Danforth did not object, and the bench trial proceeded. She now contends the district court erred by not appointing a GAL because SLD's wishes "have never been that of the petitioner[']s." Mr. Hansen counters that Ms. Danforth knowingly and intentionally waived any objection to the lack of a GAL when she failed to object at trial.

[¶13] Waiver is an "intentional relinquishment of a known right that must be manifested in some unequivocal manner." *Colton v. Town of Dubois*, 2022 WY 138, ¶ 12, 519 P.3d 976, 980 (Wyo. 2022) (quoting *Skaf v. Wyo. Cardiopulmonary Servs., P.C.*, 2021 WY 105,

¶ 14, 495 P.3d 887, 893 (Wyo. 2021)). Forfeiture, on the other hand, is "the failure to make a timely assertion of a right." *Baker v. Baker*, 2023 WY 121, ¶ 15, 539 P.3d 412, 415 (Wyo. 2023) (quoting *Mackley v. State*, 2021 WY 33, ¶ 11, 481 P.3d 639, 642 (Wyo. 2021)). "When a party affirmatively waives a right or objection, we do not review it; however, when a party merely forfeits a right or objection, we review for plain error." *Id.*

[¶14] The record does not include an affirmative gesture, an agreement, or any intentional act to indicate that Ms. Danforth waived a GAL appointment. Instead, Ms. Danforth requested a GAL early in the proceedings, and then remained silent—even as the court ruled a GAL was unnecessary. Because Ms. Danforth did not object to the court's ruling, our review is for plain error. *Vahai v. Gertsch*, 2020 WY 7, ¶ 58, 455 P.3d 1218, 1234 (Wyo. 2020) (citing *Guy-Thomas v. Thomas*, 2015 WY 35, ¶ 10, 344 P.3d 782, 786 (Wyo. 2015)) (failure to object an alleged error is reviewed for plain error). "Plain error exists if the error: 1) clearly appears in the record; 2) transgressed a clear and unequivocal rule of law; and, 3) resulted in material prejudice to a substantial right." *Case v. Outback Pipe Haulers*, 2007 WY 181, ¶ 10, 171 P.3d 514, 516-17 (Wyo. 2007) (citing *Landsiedel v. Buffalo Props., LLC*, 2005 WY 61, ¶ 17, 112 P.3d 610, 615 (Wyo. 2005)).

[¶15] Ms. Danforth satisfies the first element because the alleged error is clearly on the record—the district court declined to appoint a GAL. Ms. Danforth cannot, however, satisfy the second element, because she has not shown how the court's ruling transgressed a clear and unequivocal rule of law.

[¶16] As noted above, the law presents the district court with two options: (1) appoint a guardian ad litem, or (2) make appropriate record findings that no guardian ad litem is required. Wyo. Stat. Ann. § 14-2-312. Here, the court chose the second option and complied with the statutory directive to make a record finding that a GAL was unnecessary to represent SLD's interests. Wyo. Stat. Ann. § 14-2-312. The record supports that finding with evidence that since Ms. Danforth's indictment and arrest in 2018, Mr. Hansen has provided for SLD's economic, financial, and emotional support. He provided SLD with a home, life necessities, a healthy living environment, and appropriate medical care.

[¶17] On this record, Ms. Danforth cannot show that the district court transgressed any clear and unequivocal rule of law. Thus, she cannot show plain error.

### III. The district court did not err when it dismissed Ms. Danforth's counterclaim without a separate evidentiary hearing.

[¶18] In her answer to Mr. Hansen's petition, Ms. Danforth asserted a counterclaim to terminate Mr. Hansen's parental rights. As grounds for her counterclaim, she cited Wyo. Stat. Ann. § 14-2-309(a)(iii), (a)(ix), (a)(B) [sic], (c)(ii), (v). Reading these particular provisions in conjunction with her response suggests Ms. Danforth sought to terminate Mr. Hansen's parental rights based on her unsubstantiated allegations that he sexually assaulted

her and sexually abused SLD. On appeal, Ms. Danforth argues she was entitled to a separate hearing on her counterclaim. The record and the law refute her argument.

[¶19] On November 16, 2021, the district court ordered that one evidentiary hearing would be scheduled to hear Mr. Hansen's petition and Ms. Danforth's counterclaim. Neither party objected or requested separate trials, and the case proceeded through discovery. The district court noted this fact in its order dismissing Ms. Danforth's counterclaim, further stating that while it had discretion to order a separate trial under W.R.C.P. 42, it "did not find that separate trials were necessary for convenience, to avoid prejudice, or to expedite and economize the proceedings."

[¶20] As the district court also noted in its order, Ms. Danforth seemingly abandoned her counterclaim during pretrial proceedings, at trial, and in her post-trial filings. She made no mention of it in her Pre-trial Memorandum. Nor was the counterclaim mentioned during opening or closing statements at trial. The record shows that during trial, Ms. Danforth defended against the termination of her parental rights, but presented no evidence to support the statutory bases she cited as grounds to terminate Mr. Hansen's rights.[3] Moreover, her post-trial proposed Findings of Fact and Conclusions of Law entirely neglected to address her counterclaim. In other words, Ms. Danforth made no effort to prosecute the merits of her counterclaim. The law does not permit Ms. Danforth to walk out of the courthouse and then on appeal complain the trial court erred in denying a counterclaim that she failed to assert or substantiate with evidence at trial. *See Willmschen v. Meeker*, 750 P.2d 669, 673-674 (Wyo. 1988) (explaining that no trial court error can exist where one party fails to address their counterclaim at trial and later filed a proposed order dismissing all claims). The district court did not err when it dismissed her counterclaim without an additional hearing.

## IV. *The district court did not erroneously extend Ms. Danforth's punishment of a past crime by terminating her parental rights.*

[¶21] Parental rights are fundamental, but Wyoming law provides for termination of those rights when a parent is incapable of meeting their parental responsibilities. *Matter of BAD*, 2019 WY 83 ¶ 14, 446 P.3d 222, 225 (Wyo. 2019); Wyo. Stat. Ann. §§ 14-2-308 to -319. Termination proceedings do not focus exclusively on parental fitness or past conduct. Courts must also consider whether it would be in the child's best interest to end legal

---

[3] Conversely, the court heard evidence to contradict the allegations Ms. Danforth raised in her response to Mr. Hansen's petition. For example, SLD testified that she felt safe at home and comfortable with her father and stepmother. She said her father was "nice" and "loves us." Ms. Barney testified that the Hansen family was "very close," and SLD seemed comfortable with her parents; SLD "didn't seem anxious at all." Mr. Hansen's former attorney testified that Ms. Danforth starting accusing Mr. Hansen of sexual abuse shortly before the murder-for-hire plot came to light. In fact, the record shows that Ms. Danforth had numerous occasions to substantiate her abuse allegations: the Idaho custody proceedings, the federal court criminal proceedings, and the termination of parental rights trial. She never did so.

relations with the parent. *Interest of RAA*, 2016 WY 117, ¶ 23, 384 P.3d 1156, 1161 (Wyo. 2016) (question of best interest arises after grounds for termination are proven by clear and convincing evidence); *NRAE*, 2020 WY 121, ¶ 14, 472 P.3d 374, 378 (Wyo. 2020) (statutory grounds for termination and the child's best interests are essential findings).

[¶22]  Ms. Danforth claims the district court "primarily focused on extending [her] felony conviction."  It is true Ms. Danforth was convicted of a felony, and that crime formed the basis of Mr. Hansen's petition.  Wyo. Stat. Ann. § 14-2-309(a)(iv).  However, the record in no way bears out that the termination proceedings focused on her conviction and punishment.

[¶23]  To the contrary, the record shows the proceedings focused on the statutory elements and SLD's best interest.  For example, the record contains clear and convincing evidence to support the district court's finding that Ms. Danforth had been convicted on one count of Use of Interstate Commerce Facilities in Commission of Murder-for-Hire under 18 U.S.C. § 1958—a necessary element of proof for termination under Wyo. Stat. Ann. § 14-2-309(a)(iv).  Evidence to support the district court's finding that Ms. Danforth was unfit to have custody and control of SLD, under Wyo. Stat. Ann. § 14-2-309(a)(iv), did not rest solely on Ms. Danforth's felony conviction, but included the following facts: Ms. Danforth failed to maintain a healthy and safe environment for SLD before her arrest, Ms. Danforth provided SLD with an unstable living situation before her arrest, Ms. Danforth has failed to communicate with SLD after her incarceration, and Ms. Danforth has failed to take responsibility for her past conduct.

[¶24]  Having found sufficient proof of the statutory elements, the district court then considered SLD's best interest.  *NRAE*, 2020 WY 121, ¶ 14, 472 P.3d at 378.  The court found, and the record supports, that SLD has no relationship with, and does not know, her mother; SLD's father has cared for her since 2018; SLD shares a bond with her father; and SLD's father fosters her emotional, educational, and physical development.  Accordingly, the record supports the district court's conclusion that it was in SLD's best interest to terminate Ms. Danforth's parental rights.

[¶25]  We find the district court complied with the law and terminated Ms. Danforth's parental rights because it was in SLD's best interest, not to punish Ms. Danforth for her felony conviction.

### CONCLUSION

[¶26]  The Department of Family Services complied with the statutory requirements under Wyo. Stat. Ann. § 14-2-314, and the social study did not prejudice Ms. Danforth.  The court did not plainly err when it found that a guardian ad litem was unnecessary in this case, and it rightfully dismissed the counterclaim Ms. Danforth failed to prosecute without a separate evidentiary hearing following remand.  The district court did not extend

punishment for Ms. Danforth's felony conviction when it terminated her parental rights. For these reasons, we affirm.